RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0197p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

DEMARI LEPAUL THOMAS-MATHEWS,

*Defendant-Appellant*.

┐
│
│
> No. 21-1824
│
│
┘

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:21-cr-00124-1—Paul Lewis Maloney, District Judge.

Argued: June 15, 2023

Decided and Filed: August 25, 2023

Before: MOORE, CLAY, and NALBANDIAN, Circuit Judges

─────────────────

## COUNSEL

**ARGUED:** Annie J. Schuver, Alexander J. Noronha, UNIVERSITY OF MICHIGAN, Ann Arbor, Michigan, for Appellant. Patrick J. Castle, OFFICE OF THE U.S. ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Annie J. Schuver, Alexander J. Noronha, Melissa M. Salinas, UNIVERSITY OF MICHIGAN, Ann Arbor, Michigan, for Appellant. Patrick J. Castle, OFFICE OF THE U.S. ATTORNEY, Grand Rapids, Michigan, for Appellee.

CLAY, J., delivered the opinion of the court in which MOORE, J., joined. NALBANDIAN, J. (pp. 21–26), delivered a separate dissenting opinion.

---

**OPINION**

---

CLAY, Circuit Judge.  Defendant Demari Lepaul Thomas-Mathews appeals his sentence after pleading guilty to one count of possession with intent to distribute controlled substances, 21 U.S.C. § 841(a)(1), (b)(1)(C), and two counts of possession of a firearm in furtherance of drug trafficking, 18 U.S.C. § 924(c)(1)(A)(i).  For the reasons set forth below, the Court **VACATES** his sentence and **REMANDS** for resentencing consistent with the opinion of this Court.

## I.  BACKGROUND

In mid-2021, pursuant to a written plea agreement, Thomas-Mathews pleaded guilty to one count of possession with intent to distribute controlled substances, 21 U.S.C. § 841(a)(1), (b)(1)(C), and to two counts of possession of a firearm in furtherance of drug trafficking, 18 U.S.C. § 924(c)(1)(A)(i).  Before sentencing, the probation department completed a presentence report ("PSR") for Thomas-Mathews.  Thomas-Mathews did not object to the facts set forth in the PSR.  However, as discussed below, Mathews *did* object to the PSR's "weight attribution to cocaine base versus cocaine as an unwarranted disparity" and requested the use of a 1:1 ratio.  PSR, R. 26, Page ID #118.

### A.  Factual Background

Thomas-Mathews experienced a challenging childhood.  He avers that he was often food insecure, that his uncle physically and sexually abused him, and that he practically raised himself.  Additionally, Thomas-Mathews has an extensive criminal history.  His juvenile convictions include criminal sexual conduct, larceny, and drug possession.  His adult convictions include drug offenses, domestic violence, and perjury in connection with a murder investigation.  While serving his sentences for these crimes, Thomas-Mathews violated certain prison rules, as well as the conditions of his parole and probation.

Thomas-Mathews appeared to have turned his life around when he got out of prison in 2017.  In the years that followed, he states that he "got real close with" his children, picked them up from school "every day," and coached youth football and basketball.  Sentencing Hr'g Tr., R. 39, Page ID #210.  He told the probation department that his proudest accomplishment was "getting a barbershop."  PSR, R. 26, Page ID #111.

Unfortunately, Thomas-Mathews' trajectory took a turn for the worse when the COVID-19 pandemic struck.  The pandemic apparently hurt Thomas-Mathews' professional life as a barber.   In addition, Thomas-Mathews acknowledges that he did not respond well to his "schedule [being] wiped away," and that he "got back into [his] old style of living."  Sentencing Hr'g Tr., R. 39, Page ID #210.  It was during this time that Thomas-Mathews committed the crimes to which he pleaded guilty.  Despite Thomas-Mathews returning to his old lifestyle, he still describes the positives in his life.  Most notably, he represents having a strong relationship with his girlfriend and an "awesome" relationship with his two children.  PSR, R. 26, Page ID #110–11.  He told the probation department that he spent most of his free time with his children and coaching football.

Thomas-Mathews' guilty plea concerns two separate incidents.  The first incident took place on November 22, 2020, after police officers responded to reports of a shooting at a residence in Muskegon, Michigan.  When the officers arrived at the residence, they found Thomas-Mathews alone.  Inside the residence, the officers found bullet holes in the wall, loaded guns, and drugs.  The officers arrested Thomas-Mathews, and Thomas-Mathews posted bond two days later.  The second incident occurred on April 15, 2021, when state troopers pulled Thomas-Mathews over for traffic violations and found a loaded gun and drugs in the vehicle.  A grand jury indicted Thomas-Mathews on June 29, 2021 in connection with both incidents.

**B.  Procedural Background**

Thomas-Mathews ultimately admitted to possessing the guns, and to possessing cocaine base ("crack") and powder cocaine.  Pursuant to a written plea agreement, he pleaded guilty to one count of possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); and to two counts of possession of a firearm in furtherance of drug

trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  Thomas-Mathews, the government, and the district court all agree that Thomas-Mathews took responsibility for his actions; he pleaded guilty and accepted responsibility at his sentencing hearing.  In addition, he has expressed interest in receiving future vocational training.

The probation department calculated Thomas-Mathews' advisory sentencing range under the Sentencing Guidelines.  For each count of possession of a firearm in furtherance of drug trafficking, the advisory sentencing range was the mandatory minimum sentence of five years, consecutive to any other sentence.  For the count of possession with intent to distribute controlled substances, the advisory sentencing range was 57–71 months in prison.  *See* U.S.S.G. § 2D1.1.

### 1. The Crack-to-Powder Ratio

Under the Guidelines, crack is about 18 times more significant to an advisory sentencing range than powder cocaine.  *See* U.S.S.G. § 2D1.1, cmt. n.8(D).  Thomas-Mathews objected to the PSR's reliance on the 18:1 crack-to-powder ratio, arguing that crack cocaine "should be scored the same as cocaine on a 1:1 ratio."  PSR, R. 26, Page ID #118.  Thomas-Mathews then requested a downward variance "based upon the crack and powder cocaine disparity."  Def.'s Sentencing Mem., R. 29, Page ID #144.  Thomas-Mathews contended that the district court should "adopt the reasoning in 'Statement of the Department of Justice Before the Committee on the Judiciary United States Senate' [("DOJ Statement")] and apply a 1:1 crack-to-powder-ratio in determining the sentence in this case."  *Id.*; *see* DOJ Statement, R. 29-1.  In the DOJ Statement, the Justice Department asserted that "the current federal cocaine sentencing structure is wrong and must be changed."  DOJ Statement, R. 29-1, Page ID #158.  Going further, the Justice Department asserted that "[t]he disparity in federal cocaine sentencing policy has been the most visible symbol of racial unfairness in the federal criminal justice system for almost 35 years."  *Id.* at Page ID #152.

In his sentencing memorandum, Thomas-Mathews argued that the district court should eschew the 18:1 crack-to-powder ratio and instead apply a 1:1 ratio "because (1) the Guidelines are not tied to empirical evidence to support the recommended sentence and, (2) the Guidelines

result in a sentence that is 'greater than necessary' to achieve the goals of sentencing." Def's Sentencing Mem., R. 29, Page ID #146. The government did not oppose Thomas-Mathews' request, and instead observed that "although the disparity has not been eliminated, the [district court] may consider whether it should be, and impose a sentence that reflects the [district court's] view." Pl.'s Sentencing Mem., R. 27, Page ID #123 (citing *Spears v. United States*, 555 U.S. 261, 266 (2009) and *Kimbrough v. United States*, 552 U.S. 85, 108–110 (2007)).

### 2. Section 3553(a) Factors

In his sentencing memorandum, Thomas-Mathews urged the district court to consider: (1) his acceptance of responsibility; (2) his employment history as a barber and desire to obtain vocational training; (3) his difficult childhood; and (4) his relationship with his children. He also urged the district court to vary downward because "the Guidelines result in a sentence that is 'greater than necessary' to achieve the goals of sentencing." Def.'s Sentencing Mem., R. 29, Page ID #146.

### 3. Sentencing Hearing

The district court held a sentencing hearing in late 2021. At that hearing, Thomas-Mathews and his attorney presented arguments similar to those in the sentencing memo. Thomas-Mathews' attorney highlighted Thomas-Mathews' difficult childhood, as well as his strong relationship with his children and girlfriend. He also reiterated the arguments in favor of applying a 1:1 crack-to-powder ratio. On that topic, the district court then asked, "[h]ow many times has the Congress addressed the issue of crack cocaine and powder cocaine ratio? It's at least twice . . . . Has the Congress taken up the cudgel of the Department's new position regarding one-to-one and passed a statute . . . that changes it to one-to-one?" Sentencing Hr'g Tr., R. 39, Page ID #207–08.

Thomas-Mathews then addressed the district court. He told the district court that he "take[s] full responsibilit[y] for [his] actions" and that he "created this whole situation." *Id.* at Page ID #209. He then highlighted his difficult childhood, and his love for and relationship with his family. He also emphasized his contributions to his community as a youth sports coach.

He once again stated that he accepts full responsibility for his actions and that he would "learn [his] lesson" and "make positive better decisions" in the future.  *Id.* at Page ID #210.

The district court then announced its sentencing decision from the bench, observing that it must "impose a sentence sufficient, but not greater than necessary to comply with the purposes of sentencing set forth in" 18 U.S.C. § 3553(a).  *Id.* at Page ID #211.  The district court noted that "the guidelines are advisory," that it "must make an individualized assessment based on the facts presented," and that it has "discretion in determining an appropriate sentence."  *Id.*  From there, the district court expressed that the § 3553(a) factors consider "the nature and circumstances of the offense, and the history and characteristics of the defendant."  *Id.*  The district court observed that "[t]he sentence must reflect the seriousness of the offense; promote respect for law; provide just punishment for the offense; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; [and] provide the defendant with needed medical, educational[,] and/or other correctional treatment."  *Id.*

The district court then turned to Thomas-Mathews' "invitation . . . to utilize a one-to-one ratio of crack cocaine and powder cocaine."  *Id.* at Page ID #212.  The district court stated that it:

> declines the invitation.  The [c]ourt has no policy dispute with the present ratio which pertains to crack and powder cocaine.  The [c]ourt recognizes that with the change of administration and the Department of Justice, that they are taking a different policy position than the former administration on this issue as the policy maker for the executive branch of government.  However, *the Congress is the one who passes the statutes of this nature* or the Guidelines Commission revisits the guidelines and submits guidelines with a one-to-one ratio.  *That is the proper way to, in the court's judgment, to deal with this particular issue*.  I recognize it's a very important issue, but the [c]ourt at the present time has no policy dispute regarding the contours of the guideline as presently constituted.

*Id.* (emphasis added).

The district court proceeded to address the crimes to which Thomas-Mathews pleaded guilty, observing that:

> [t]he circumstances of this particular case are very concerning to the [c]ourt.  We have the toxic mix between possession of firearms and drug trafficking.  Not only do we have that mix, but we also have a situation where the defendant is found with a weapon which he is not supposed to have, on November 22nd, 2020, only

to be followed up with another incident approximately six months later, on April 15, 2021, where he is also in possession of a firearm in furtherance of drug trafficking.

*Id.* at Page ID #213. Based upon those facts, the district court concluded that Thomas-Mathews poses "a risk to the law abiding public" and that "[h]e needs to be specifically deterred." *Id.* At the same time, the district court stated that it:

> fully recognize[s] the defendant's eloquent allocution statement here today, he is taking responsibility for his conduct. He asserts that he wants to do better. The [c]ourt has no dispute with the notion that that is the defendant's goal, and I hope he executes it as far as what he does for himself during his prison time to make sure that he is better suited in terms of having a means to support himself and a pro-social attitude rather than dealing with drug dealers and possessing weapons at the same time.

*Id.* Additionally, the district court "recognize[d] the defendant's history[,] stating that [t]here was a period of time after he was discharged from the Michigan Department of Corrections where there appears to be minor blips in the road, if none at all." *Id.* at Page ID #214. "Unfortunately," the district court observed:

> by the time 2020 rolled around, [Thomas-Mathews] was back at it. He's got prior convictions of drug dealing . . . in his criminal history. He is categorized as a Criminal History Category V. Mr. Thomas-Mathews purports that he wants to do better. Again, I have no reason to disbelieve that, but at the present time, he needs a sentence within the advisory guideline range on [the drug charge].

*Id.*

The district court imposed a sentence of 60 months for the drug count, and two 60-month consecutive sentences for each of the two gun counts. *Id.* The sentence totaled 180 months' incarceration. After announcing the sentence, the district court asked whether Thomas-Mathews or his attorney had "any legal objection to the sentence imposed." *Id.* at Page ID #217. Thomas-Mathews' attorney stated that he had no objections, and that he was satisfied that the district court addressed all of his arguments. Thomas-Mathews' timely appeal followed.

## II.  DISCUSSION

### A.  Issue Preservation

Before addressing the standard of review, the Court must first determine which issues are preserved for appellate review.  A defendant "is not required to object to the substantive reasonableness of his sentence to preserve that issue for appeal." *United States v. Herrera-Zuniga*, 571 F.3d 568, 578 (6th Cir. 2009) (citing *United States v. Penson*, 526 F.3d 331, 337 (6th Cir. 2008)).  The parties therefore do not dispute that Thomas-Mathews preserved his arguments concerning substantive reasonableness.  However, a "defendant generally forfeits the right to challenge on appeal any procedural errors to which he did not object at the time of sentencing."  *Id.* (citing *United States v. Vonner*, 516 F.3d 382, 385–86, 390–91 (6th Cir. 2008) (en banc)).  The Court requires "clear articulation of any objection and the grounds therefor," to "aid the district court in correcting any error, tell the appellate court precisely which objections have been preserved and which have been [forfeited], and enable the appellate court to apply the proper standard of review to those preserved."  *United States v. Bostic*, 371 F.3d 865, 873 (6th Cir. 2004) (alteration in original) (quoting *United States v. Jones*, 899 F.2d 1097, 1102 (11th Cir. 1990)).

On appeal, Thomas-Mathews argues that his sentence was procedurally unreasonable because the district court:  (1) treated the advisory crack-to-powder sentencing guideline as effectively mandatory; (2) failed to address Thomas-Mathews' argument that applying an 18:1 crack-powder sentencing disparity would yield an excessive sentence in Thomas-Mathews' specific case; and (3) failed to address relevant § 3553(a) factors, particularly Thomas-Mathews' history and characteristics.  The parties disagree as to whether Thomas-Mathews preserved those issues for this Court's review.[1]  Thomas-Mathews presents two independent bases to support his argument that he preserved the issues.  The Court addresses each in turn.

---

[1]To preserve an issue for appellate review, a litigant must present the issue in his appellate briefing. *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 610–11 (6th Cir. 2016).  The parties do not dispute that Thomas-Mathews meets that requirement.  Instead, they dispute whether Thomas-Mathews adequately raised the issues before the district court.

**1. Previously Raised Objections**

Thomas-Mathews contends that he previously raised his objections concerning his sentence's procedural reasonableness. When the district court asks the *Bostic* question, the forfeiture rule applies only to "objections not previously raised." *United States v. Blackie*, 548 F.3d 395, 398 (6th Cir. 2008) (quoting *Bostic*, 371 F.3d 865, 872–73). However, where an appeal concerns whether a district court *addressed* a certain issue at sentencing, "such an objection must be preserved by an objection *after* the sentencing because it 'cannot be "preserved" in advance of a sentencing event that has yet to occur.'" *United States v. Kamper*, 748 F.3d 728, 740 (6th Cir. 2014) (emphasis added) (citing *United States v. Lamb*, 431 F. App'x 421, 423–24 (6th Cir. 2011)). Thus, a defendant who declines to object after a district court announces its sentence, does "not undermine [his] right to appeal issues he had 'previously raised.'" *Vonner*, 516 F.3d at 386 (quoting *Bostic*, 371 F.3d at 872–73). He does, however, "undermine his right to challenge the adequacy of the court's *explanation* for the sentence—an issue that became apparent as soon as the court finished announcing its proposed sentence and that counsel nonetheless declined the court's invitation to address." *Id.* (emphasis added)

This Court's decision in *Kamper* is instructive as to whether Thomas-Mathews preserved his argument that the district court treated the advisory crack-to-powder sentencing guideline as effectively mandatory. In that case, the defendant argued "that the district court erred by misunderstanding its authority to reject the MDMA-to-marijuana ratio embodied in the Sentencing Guidelines." *Kamper*, 748 F.3d at 740. The Court held that "[n]o explicit objection . . . was required" after the district court announced its sentence and asked the *Bostic* question because the defendant "had already argued and the district court had explicitly addressed the issue." *Id.* (citing *United States v. Simmons*, 587 F.3d 348, 355 (6th Cir. 2009)). The argument here is nearly identical; the only difference is the drugs at issue. Accordingly, the Court finds that Thomas-Mathews preserved his argument that the district court abused its discretion by treating the advisory crack-to-powder sentencing guideline as effectively mandatory. *See id.*

However, Thomas-Mathews' "previously raised" objection argument fails with respect to his two remaining procedural reasonableness claims. Both of those arguments concern whether

the district court *addressed* certain arguments that he previously raised. Thomas-Mathews could not have possibly objected to the district court's explanation of its sentence before the district court actually explained its sentence. *See Vonner*, 516 F.3d at 386; *Bostic*, 371 F.3d at 872–73; *Kamper*, 748 F.3d at 740.

### 2. Overlap Between Procedural and Substantive Reasonableness

Thomas-Mathews presents a "a second, independent reason why Mr. Thomas-Mathews's procedural reasonableness claims" are preserved: "his challenge involves overlapping substantive and procedural issues." That argument is not persuasive.

This Court recognizes that "[t]he border between procedural and substantive reasonableness can be blurry, and the analysis often overlaps." *United States v. Small*, 988 F.3d 241, 258 (6th Cir. 2021) (citing *Herrera-Zuniga*, 571 F.3d at 579). For that reason, this Court has held that where procedural and substantive objections "overlap," a contemporaneous procedural objection may not be necessary. *Herrera-Zuniga*, 571 F.3d at 579–81. The Court so held because "the *Bostic* procedure and the *Vonner* forfeiture rule were adopted to serve practical ends, [and] it would be inappropriate to construe those requirements as formal and inflexible procedural protocols." *Id.* at 580. Thus, the Court applies *Vonner*'s forfeiture rule "pragmatic[ally]." *Id.*; *see also Small*, 988 F.3d at 258 (indicating that one way to determine whether "the overlap [between substantive and procedural reasonableness] is prevalent," is to examine whether a defendant's procedural and substantive arguments "mirror" one another.). But the overlap exception to the *Bostic*/*Vonner* objection requirement applies only where there is "confusion as to whether [the] claims are 'procedural' or 'substantive' challenges," *Herrera-Zuniga*, 571 F.3d at 579, or when the substantive and procedural arguments "mirror" each other, *Small*, 988 F.3d at 258.[2]

Thomas-Mathews contends that, just as in *Small* and *Herrera-Zuniga*, the procedural and substantive issues in this appeal overlap. For example, Thomas-Mathews challenges the district court's failure to consider his history and characteristics as required by § 3553(a)(1) (procedural

---

[2]In *Small*, the "[d]efendants' substantive arguments mirror[ed] their procedural arguments" insofar as both arguments centered on the district court having "relied on allegation[s] not proven by a preponderance of the evidence[] in deciding to sentence them to an above the guidelines-range sentence." 988 F.3d at 258.

reasonableness) and its unreasonable weighing of his history and characteristics relative to other § 3553(a) factors (substantive reasonableness).

His argument fails for two reasons. First, although Thomas-Mathews' procedural and substantive arguments are closely linked, they do not "mirror" each other. *Small*, 988 F.3d at 258. Thomas-Mathews' second and third procedural arguments concern the nature of the district court's explanation of its sentence, *i.e.*, whether the district court sufficiently explained its rationale and whether it considered all of the § 3553(a) factors. His substantive arguments, meanwhile, concern whether the district court arrived at the correct outcome. Second, unlike in *Herrera-Zuniga*, there is not "lingering confusion in this circuit as to whether" the second and third arguments are procedural or substantive. 571 F.3d at 579. It is well established in this Circuit that whether a district court "consider[ed] the sentencing factors in 18 U.S.C. § 3553(a) . . . and adequately explain[ed] why it chose the sentence" are matters of procedural reasonableness. *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).[3]

Accordingly, the Court holds that Thomas-Mathews preserved the first argument concerning procedural reasonableness, but failed to preserve the second and third arguments.

## B. Standard of Review

"On appeal, district court sentencing determinations are reviewed for reasonableness." *United States v. Gates*, 48 F.4th 463, 468 (6th Cir. 2022) (citing *United States v. Nichols*, 897 F.3d 729, 736 (6th Cir. 2018)). "The reasonableness inquiry has two components: procedural and substantive." *Id.* at 468–69 (citing *Gall*, 552 U.S. at 51). The Court generally reviews whether a sentence is reasonable for abuse of discretion. *See id.* at 469; *Gall*, 552 U.S. at 56.

---

[3]In its brief, the government argues that *Herrera-Zuniga* does not control because it "has [] been confined to the circumstances of that case." Pl.'s Br. at 17 (citing *United States v. Massey*, 663 F.3d 852, 857 (6th Cir. 2011)). The government is incorrect. This Court continues to rely on *Herrera-Zuniga*. *See, e.g.*, *Small*, 388 F.3d at 258–59; *Kamper*, 748 F.3d at 740. Moreover, "[a] panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001) (alteration in original) (quoting *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985)). Therefore, to the extent *Massey* conflicts with *Herrera-Zuniga*, *Herrera-Zuniga* controls. *See id.*

However, "[w]here a defendant fails to properly preserve an issue for appeal, that claim is subject to review for plain error only." *Herrera-Zuniga*, 571 F.3d at 580 (citing Fed. R. Crim. P. 52(b)).

Accordingly, the Court reviews for abuse of discretion whether the district court treated the advisory crack-to-powder sentencing guideline as effectively mandatory and whether Thomas-Mathews' sentence was substantively reasonable. *See Gates*, 48 F.4th at 468–69, 476. However, the Court reviews for plain error whether the district failed to address Thomas-Mathews' argument that applying an 18:1 crack-to-powder sentencing disparity would yield an excessive sentence in Thomas-Mathews' specific case, and whether it failed to address relevant § 3553(a) factors. *See Herrera-Zuniga*, 571 F.3d at 580. A party may obtain relief on plain error review "only if the error is 'plain' and 'affects substantial rights.'" *Vonner*, 516 F.3d at 385 (quoting Fed. R. Crim. P. 52(b)).

### C. Analysis

"Procedural error occurs when the district court 'fail[s] to calculate (or improperly calculat[es]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence.'" *Gates*, 48 F.4th at 469 (emphasis omitted) (alterations in original) (quoting *United States v. Fowler*, 819 F.3d 298, 304 (6th Cir. 2016)). "When reviewing a sentence's reasonableness, we typically first address the procedural reasonableness of a sentence and do not analyze its substantive reasonableness unless the sentence is 'procedurally sound.'" *United States v. Adams*, 873 F.3d 512, 520 (6th Cir. 2017) (quoting *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007)). In this case, because we find that Thomas-Mathews' sentence is not procedurally sound, we do not analyze its substantive reasonableness. *See id.*

#### 1. Treating the Crack-to-Powder Sentencing Guideline as Effectively Mandatory

In his brief on appeal, Thomas-Mathews contends that the district court "treated the Guidelines' 18:1 crack-to-powder cocaine ratio as effectively mandatory." Def.'s Br. at 12. Specifically, he argues that the district court misunderstood the nature of its "its discretion to vary from or reject the advisory crack-to-powder cocaine Guidelines." *Id.* He contends that the

district court applied a "legally erroneous belief that Congress or the U.S. Sentencing Commission—and not the district court—have ultimate discretion to determine the appropriate crack-to-powder ratio for Mr. Thomas-Mathews's sentence." *Id.* at 13. The Court agrees.

"[T]he cocaine Guidelines, like all other Guidelines, are advisory only." *Kimbrough v. United States*, 552 U.S. 85, 91 (2007); *see also United States v. Booker*, 543 U.S. 220, 244 (2005). Therefore, a district court errs if it treats "the crack/powder disparity [as] effectively mandatory." *Id.* Instead, a district court "must include the Guidelines range in the array of factors warranting consideration." *Id.* At the same time, "[t]he fact that a district court *may* disagree with a Guideline for policy reasons and *may* reject the Guidelines range because of that disagreement does not mean that the court *must* disagree with that Guideline or that it *must* reject the Guidelines range if it disagrees." *Kamper*, 748 F.3d at 742 (quoting *United States v. Brooks*, 628 F.3d 791, 800 (6th Cir. 2011)).

Where a district court treats the crack-to-powder ratio as effectively mandatory, this Court should "remand the case for resentencing." *United States v. Vandewege*, 561 F.3d 608, 610 (6th Cir. 2009) (citing *United States v. Johnson*, 553 F.3d 990 (6th Cir. 2009) ("*Johnson I*")); *see also United States v. Johnson*, 407 F. App'x 8, 10 (6th Cir. 2010) ("*Johnson II*") ("[W]hen a district court indicates that policy disagreements are not a proper basis to vary, then the resulting sentence is not presumptively reasonable. More fundamentally, in such a case, the district court has committed procedural error by failing to appreciate the scope of its discretion."). Important to this appeal, this Court has recognized that "*Kimbrough* clarified the *irrelevance* of congressional deference." *Johnson II*, 407 F. App'x at 11 (emphasis added). Therefore, although "district judges have wide discretion in fixing a crack-to-powder ratio, they are not free to cede their discretion [to Congress] by concluding that their courtrooms are the wrong forum for setting a crack-to-powder ratio." *Id.*

In this case, the district court expressly stated that "the guidelines are advisory," that it "must make an individualized assessment based on the facts presented," and that it has "discretion in determining an appropriate sentence." Sentencing Hr'g Tr., R. 39, Page ID #211. The district court also stated twice that it had "no policy dispute with the present ratio which pertains to crack and powder cocaine." *Id.* at Page ID #212.

Those statements are insufficient, however, when read within the context of the sentencing hearing transcript. The district court repeatedly emphasized its belief that Congress, and not the courts, should determine sentencing for crack and powder cocaine. Early in the sentencing hearing, for example, the district court asked "[h]ow many times has the Congress addressed the issue of crack cocaine and powder cocaine ratio? It's at least twice . . . . Has the Congress taken up the cudgel of the Department's new position regarding one-to-one and passed a statute . . . that changes it to one-to-one?" Sentencing Hr'g Tr., R. 39, Page ID #207–08. Later, the district court said that it:

> recognizes that with the change of administration and the Department of Justice, that they are taking a different policy position than the former administration on this issue as the policy maker for the executive branch of government. However, the *Congress is the one who passes the statutes of this nature* or the Guidelines Commission revisits the guidelines and submits guidelines with a one-to-one ratio. *That is the proper way to, in the court's judgment, to deal with this particular issue.* I recognize it's a very important issue, but the [c]ourt at the present time has no policy dispute regarding the contours of the guideline as presently constituted.

*Id.* at Page ID #212 (emphasis added). At no point does the district court explain *why* it "has no policy dispute" regarding the sentencing disparity. *Id.* Instead, it simply asserts that it has no policy dispute "at the present time." *Id.* By emphasizing its belief that Congress, not courts, should decide on the punishments for crack and powder cocaine, and by adding that it has no objections *at the present time*, it seems that the district court does not have a policy objection because it believes that Congress, not the court, should make such decisions, and that the district court should defer to Congress in such matters.

Our holding that the district court impermissibly ceded its discretion to Congress is informed by *Johnson I* and *Johnson II*. In *Johnson I*, this Court vacated a sentence because the district court failed to recognize that it had "authority to develop categorical alternatives to the crack-to-powder ratios contained in the Guidelines based upon policy disagreements with the Guidelines." *Johnson I*, 553 F.3d at 996. "At Johnson's resentencing, the district judge purported to recognize the advisory character of the Guidelines," stating that "I fully recognize my authority to vary from the crack/powder cocaine guidelines based solely on a policy disagreement with the 100 to one ratio . . . . The operative word in the *Kimbrough* case is may,

m-a-y." *Johnson II*, 407 F. App'x at 10. Alongside that statement, the district court also opined that "the legislative branch of government is precisely the correct forum for this policy judgment. Courts are ill-equipped to make these decisions." *Id.* Based upon those comments, the Court remanded for resentencing once more because the district judge's "remarks about the proper role of courts reveal his belief that a policy disagreement is not a proper basis for a judge to vary." *Id.* Put simply, musing about which branch of government ought to change the crack-to-powder ratio undermines confidence that the district court properly recognizes its discretion to vary from the ratio. *See id.* at 10–11.

The district court's comments in the instant case—*e.g.*, that Congressional action is "the proper way to, in the court's judgment, to deal with this particular issue," Sentencing Hr'g Tr., R. 39, Page ID #212—are almost identical to those that necessitated resentencing in *Johnson II*. Therefore, we repeat: a district court commits "procedural error by failing to appreciate the scope of its discretion" and by indicating that policy "disagreements are not a proper basis to vary" from the Guidelines. *Johnson II*, 407 F. App'x at 10 (citing *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir. 2008)). Because district courts are not free to "cede their discretion [to Congress] by concluding that their courtrooms are the wrong forum for setting a crack-to-powder ratio," *id.* at 11, Thomas-Mathews' sentence was procedurally unreasonable. "On remand from this decision, the district court may, as a matter of policy, agree or disagree with the Guidelines ratio that designates crack cocaine offenses as more serious than powder cocaine offenses. But it must not rely on the Guidelines for reasons that *Kimbrough* rejected, such as institutional competence, deference to Congress, or the risk that other judges will set different ratios." *Id.* at 11–12 (footnote omitted).

### 2. Failing to Address Whether Applying the 18:1 Sentencing Ratio Would Result in a Sentencing Disparity

Before the district court, Thomas-Mathews made two distinct arguments concerning the 18:1 Sentencing ratio. First, as discussed above, Thomas-Mathews urged the district court to vary downward from the Guidelines range "based solely on policy . . . disagreements with the Guidelines." Def.'s Sentencing Mem., R. 29, Page ID #145 (quoting *Kimbrough*, 552 U.S. at 101). Second, and independently, Thomas-Mathews asked that the district court vary downward

because "the Guidelines result in a sentence that is 'greater than necessary' to achieve the goals of sentencing." Def.'s Sentencing Mem., R. 29, Page ID #146. Thomas-Mathews predicated this second argument on the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), which held that the Guidelines are "effectively advisory" and that courts can "tailor a sentence" in light of other factors set forth in 18 U.S.C. § 3553(a).[4] *Booker*, 543 U.S. at 245.

In making the second of these arguments, Thomas-Mathews urged the district court to impose a below-Guidelines sentence "based on an individualized determination that they yield an excessive sentence in [his] particular case." *Spears v. United States*, 555 U.S. 261, 264 (2009) (citing *Booker*, 543 U.S. at 245–46). At the sentencing hearing, his attorney added that:

> Thomas-Mathews does have two 924(c) convictions in this case, so his sentence is being enhanced by just on those two minimums a total of ten years, and so I think a sentence with a one-to-one ratio on the possession with intent to deliver count would accomplish an overall sentence that would be appropriate here.

Sentencing Hr'g Tr., R. 39, Page ID #207. On appeal, Thomas-Mathews contends that the district court failed to respond at all to his second argument.

"Where a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006). That requirement "assures not only that the defendant can understand the basis for the particular sentence but also that the reviewing court can intelligently determine whether the specific sentence is indeed reasonable." *Id.* For that reason, this Court has held that a district court plainly errs where it is "non-responsive to [a non-frivolous] argument" at sentencing. *United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010); *see also United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009); *United States v. Lalonde*, 509 F.3d 750, 770 (6th Cir. 2007). To determine whether the district court plainly erred, this Court should be able "to answer the simple question of why the district judge decided to impose" the sentence it imposed. *Wallace*, 597 F.3d at 803.

---

[4]In his brief on appeal, Thomas-Mathews refers to the first argument as his "*Kimbrough* argument," and the second as his "*Booker*/§ 3553(a) argument." Def.'s Br. at 18.

Where a defendant argues "that the application of a particular guideline-approved practice in a specific case produces a sentencing range that is unnecessarily high," the defendant has "raise[d] substantial particularized issues well beyond a simple . . . argument that a sentencing range is excessive." *United States v. Robertson*, 309 F. App'x 918, 923 (6th Cir. 2009). Moreover, where such an argument is "nonfrivolous," the district court should address it expressly. *United States v. Peters*, 512 F.3d 787, 789 (6th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 357 (2007)).

In this case, after rejecting Thomas-Mathews' policy argument for why it should decline to use the 18:1 ratio, the district court immediately moved on to sentencing more generally and considered the § 3553(a) factors. It did so without addressing the "more specific and complex" argument, *Robertson*, 309 F. App'x at 924, of whether it should use a 1:1 ratio to calculate a different Guideline range in order to respond to Thomas-Mathews' argument that failing to do so would result in an excessive sentence *specifically for Thomas-Mathews*. After addressing the crack-to-powder *policy* argument, the district court stated that:

> [t]he circumstances of this particular case are very concerning to the [c]ourt. We have the toxic mix between possession of firearms and drug trafficking. Not only do we have that mix, but we also have a situation where the defendant is found with a weapon which he is not supposed to have, on November 22nd, 2020, only to be followed up with another incident approximately six months later, on April 15, 2021, where he is also in possession of a firearm in furtherance of drug trafficking.

Sentencing Hr'g Tr., R. 39, Page ID #213.

Had Thomas-Mathews "argued only that, generally speaking, his [offense] did not support the guideline range calculated when applying the § 3553(a) factors, the district court's mere recitation of Robertson's [offense] may have been sufficient." *Robertson*, 309 F. App'x at 924 (citing *Rita*, 551 U.S. at 359). But because Thomas-Mathews' "argument was much more specific and complex than a general § 3553(a) variance argument . . . the district court was required to" address it and "explain why [it] rejected [the] argument." *Id.* (quoting *Peters*, 512 F.3d at 789). The district committed procedural error by failing to explain "why the 18:1 ratio made sense *in this case*." Def.'s Reply Br. at 13 (emphasis added). Admittedly, the district court explained why it declined to vary downward from the Guidelines' range of fifty-seven to

seventy-one months of imprisonment because of the § 3553(a) factors. But it did not address specifically that failing to use the 1:1 ratio would result in an excessive sentence for Thomas-Mathews. Because we are remanding this case for resentencing, the district court will have the opportunity on remand to address this argument specifically.

### 3. Failing to Address Relevant § 3553(a) Factors

Thomas-Mathews argues on appeal that "[t]he district court committed further procedural error by failing to consider relevant § 3553(a) factors aside from what was apparent on the face of Mr. Thomas-Mathews's criminal record." Def.'s Br. at 20. He adds that:

> [a]lthough the court purported to acknowledge the § 3553(a) factors, it only provided conclusory statements of law. And its discussion of individualized facts was minimal. To the extent that the district court discussed Mr. Thomas-Mathews's "history," the discussion was limited to criminal convictions. Moreover, its references to other individualized facts did not make apparent which of the § 3553(a) factors the judge thought those facts impacted, if they affected them at all, or how those facts affected the sentence imposed.

Def.'s Br. at 20. We find Thomas-Mathews' argument to be persuasive. The district court's terse discussion of the § 3553(a) factors and its consideration only of Thomas-Mathews' criminal history and failure to address Thomas-Mathews' personal history and characteristics constituted error.

This Court has held that "there is no requirement that the district court . . . engage in a ritualistic incantation of the § 3553(a) factors [but that] the district court's sentence should nonetheless reflect the considerations listed in § 3553(a)." *Wallace*, 597 F.3d at 802 (alteration in original) (quoting *United States v. Chandler*, 419 F.3d 484, 488 (6th Cir. 2005)). In other words, "there must [] be sufficient evidence in the record to affirmatively demonstrate the court's consideration of" the § 3553(a) factors. *United States v. McBride*, 434 F.3d 470, 475 n.3 (6th Cir. 2006) (citing *United States v. Webb*, 403 F.3d 373 (6th Cir. 2005)). "Thus, while something less than a factor-by-factor recitation is acceptable, something more than a simple and conclusory judicial assertion that the court has considered 'the nature and circumstances of the offense and the history and characteristics of the defendant' is essential." *United States v. Ferguson*, 518 F. App'x 458, 467 (6th Cir. 2013). "Conclusory judicial assertion[s]" that the

district court considered all factors are insufficient. *Id.*; *see also United States v. Byrd*, 843 F. App'x 751, 756 (6th Cir. 2021) ("Our job is to review what the district court did and why. The district court's job is, in part, to show its work. If this court is left to divine or extrapolate the district court's reasoning after the fact, the district court has not done its job of imposing a procedurally reasonable sentence."). As mentioned above, this Court has vacated sentences even on plain error review if the district court is "non-responsive to [a non-frivolous] argument" at sentencing. *Wallace*, 597 F.3d at 803.

In this case, the district court: (1) laid out the § 3553(a) factors; (2) recognized Thomas-Mathews' acceptance of responsibility and desire to do better; (3) observed that during the period between Thomas-Mathews' release from prison and the onset of the COVID-19 pandemic, he was doing well in life; and (4) emphasized Thomas-Mathews' prior criminal history and return to criminality in 2020. Beyond that, the district court made a general statement that it "recognize[d] the defendant's history." Sentencing Hr'g Tr., R. 39, Page ID #214. But the only history that the district court discussed, beyond what is highlighted above, is Thomas-Mathews' *criminal* history. Absent from the district court's sentencing consideration is any discussion of Thomas-Mathews' childhood, his family, his children, his role in the community, or his career as a barber. Thomas-Mathews repeatedly highlighted those issues in his sentencing memo and at his sentencing hearing.

Thus, the district court failed "to show its work." *Byrd*, 843 F. App'x at 756. Instead, it made "a simple and conclusory judicial assertion," *Ferguson*, 518 F. App'x at 467, that it must "impose a sentence sufficient, but not greater than necessary to comply with the purposes of sentencing set forth in 18 U.S. Code 3553(a)," Sentencing Hr'g Tr., R. 39, Page ID #211. There is not "sufficient evidence in the record to affirmatively demonstrate the court's consideration of" the § 3553(a) factors. *McBride*, 434 F.3d at 475 n.3 (citing *Webb*, 403 F.3d 373). As a result, this Court "is left to divine or extrapolate" whether the district court even considered Thomas-Mathews' chief arguments. *Byrd*, 843 F. App'x at 756. Because the district court was largely unresponsive to Thomas-Mathews' arguments around the § 3553(a) factors, "even under [the] more deferential [plain error] standard, this case must be remanded for re-sentencing." *Wallace*, 597 F.3d at 804.

**4. Reassignment**

Finally, Thomas-Mathews "requests reassignment of his case to a different district judge for resentencing." Def.'s Br. at 34. This Court "possess[es] the power, under appropriate circumstances, to order the reassignment of a case on remand pursuant to 28 U.S.C. § 2106." *United States v. Lanier*, 988 F.3d 284, 298 (6th Cir. 2021) (quoting *Rorrer v. City of Stow*, 743 F.3d 1025, 1049 (6th Cir. 2014)). However, the Court has cautioned that "[r]eassignment is an extraordinary power and should be rarely invoked." *Rorrer*, 743 F.3d at 1049 (quotation omitted). To determine whether reassignment is necessary, the Court considers three factors:

> (1) whether the original judge would reasonably be expected to have substantial difficulty in putting out of his or her mind previously expressed views or findings; (2) whether reassignment is advisable to preserve the appearance of justice; and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Lanier*, 988 F.3d at 298–99 (quoting *Rorrer*, 743 F.3d at 1049).

As discussed above, the procedural errors in this case are nearly identical to those in the *Johnson* cases. Nevertheless, the Court is cognizant that "[r]eassignments should be made infrequently and with the greatest reluctance." *Solomon v. United States*, 467 F.3d 928, 935 (6th Cir. 2006) (quoting *Sagan v. United States*, 342 F.3d 493, 501 (6th Cir. 2003)). The Court, therefore, declines to reassign the case. On remand, we trust that the district judge will "put[] out of his . . . mind previously expressed views or findings." *Lanier*, 988 F.3d at 299 (quoting *Rorrer*, 743 F.3d at 1049).

## III. CONCLUSION

On remand, the district court must clearly recognize its independent authority to vary from the Guidelines' crack-to-powder ratio. Additionally, as discussed herein, the district court should expressly consider Thomas-Mathews' arguments concerning the § 3553(a) factors and his argument that a within Guidelines sentence is greater than necessary in his individual case.

For the reasons set forth above, this Court **VACATES** Thomas-Mathews' sentence and **REMANDS** for resentencing consistent with the opinion of this Court.

-------------------

**DISSENT**

-------------------

NALBANDIAN, Circuit Judge, dissenting.   Because I would find Thomas-Mathews's sentence procedurally and substantively reasonable, I would affirm the district court's sentence. So I respectfully dissent.[1]

**I.**

Starting with procedural reasonableness, Thomas-Mathews argues that the district court abused its discretion by misapprehending its authority to depart from the 18:1 ratio.  I agree that we review this argument for an abuse of discretion.

We presume that a district court understands its discretion to deviate from the Guidelines absent clear evidence to the contrary.  *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir. 2008); *cf. United States v. Vonner*, 516 F.3d 382, 392 (6th Cir. 2008) (en banc) ("Our affirmance in today's case respects the central lesson from [*Booker*, *Rita*, *Gall*, and *Kimbrough*] that district courts have considerable discretion in this area and thus deserve the benefit of the doubt when we review their sentences and the reasons given for them.").   The district court "fully recognize[d its] discretion in determining an appropriate sentence as recognized by the United States Supreme Court in its decisions in *Booker*, *Kimbrough*, *Rita*, *Gall*, *Spears*, and the Sixth Circuit case of *Herrera-Zuniga*."  R. 39, Sentencing Hearing, PageID 211, Page 12.  The court declined to depart from the Guidelines because it had "no policy dispute with the present ratio which pertains to crack and powder cocaine."  *Id.* at PageID 212, Page 13.  Agreement with the Guidelines policy was a permissible reason for the court to adhere to the 18:1 ratio.  *See United States v. Brooks*, 628 F.3d 791, 800 (6th Cir. 2011).

Thomas-Mathews contends that the district court impermissibly ceded its discretion to Congress.  He relies on the court's questions to the government about the congressional history

-------------------

[1]I join the majority with respect to their holdings on issue preservation and on the appropriate standard of review.  I agree that the case should not be reassigned, but since I would affirm, I would not reach the question of reassignment.

of revision of the ratio and its statement that "Congress is the one who passes the statutes of this nature or the Guidelines Commission revisits the guidelines and submits guidelines with a one-to-one ratio. That is the proper way to, in the Court's judgment, to deal with this particular issue."  R. 39, Sentencing Hearing, PageID 207–08, 212, Page 8–9, 13.

Read in context, the court's questions about congressional history responded to Thomas-Mathews's arguments about the executive branch's recent change in position on the 18:1 ratio. And, regarding the court's statement about the roles of Congress and the Guidelines Commission, the court added that it recognized, "with the change of administration and the Department of Justice, that they are taking a different policy position than the former administration on this issue as the policy maker for the executive branch of government."  *Id.* at PageID 212, Page 13.

Thus, comparing congressional action to executive action, the court believed that *congressional* action on the Guidelines is more significant than *executive* action.  But at no point did the court comment on the power of the *court* to diverge from the Guidelines.  And if that was not clear enough, the court ended its discussion of the requested departure by reiterating that "the Court at the present time has no policy dispute regarding the contours of the guideline as presently constituted."  *Id.*

Because we assume that district courts understand their discretion to deviate, the court expressed its understanding of this discretion, the court twice stated that it agreed with the current ratio, and the transcript does not show a misunderstanding of the court's authority, I would not find that the court abused its discretion.

## II.

Turning to Thomas-Mathews's next procedural reasonableness challenge, he argues that the district court erred by failing to consider whether the 18:1 ratio was excessive in his specific case and by failing to address certain 18 U.S.C. § 3533(a) factors.  I agree that these claims are governed by plain error.

At the sentencing hearing, Thomas-Mathews argued for a 1:1 ratio in part because he was already facing a lengthy sentence due to mandatory minimums under 18 U.S.C. § 924(c):

> Thomas-Mathews does have two 924(c) convictions in this case, so his sentence is being enhanced . . . a total of ten years, and so I think a sentence with a one-to-one ratio on the possession with intent to deliver count would accomplish an overall sentence that would be appropriate here.

R. 39, Sentencing Hearing, at PageID 207, Page 8.

The court directly responded to that argument. Immediately after addressing Thomas-Mathews's policy disagreements, the court said:

> The circumstances of this particular case are very concerning to the Court. We have the toxic mix between possession of firearms and drug trafficking. Not only do we have that mix, but we also have a situation where the defendant is found with a weapon which he is not supposed to have, on November 22nd, 2020, only to be followed up with another incident approximately six months later, on April 15, 2021, where he is also in possession of a firearm in furtherance of drug trafficking.

*Id.* at PageID 213, Page 14. Thomas-Mathews describes the court's statement as "a separate discussion about firearm possession," unrelated to his argument for an individualized departure from the Guidelines. Rep. Br. at 13. Not so. The court's statement is a direct rebuttal of that argument. Instead of seeing the 18 U.S.C. § 924(c) mandatory minimums as favoring a downward variance, as Thomas-Mathews argued, the court found the "toxic mix between possession of firearms and drug trafficking" weighed against a downward departure. R. 39, Sentencing Hearing, at PageID 213, Page 14. Rather than fail to consider Thomas-Mathews's argument for a case-based departure, the court considered the circumstances of his case and explained why it rejected that argument. The court did not err, much less plainly.

Thomas-Mathews also contends that the district court erred in disregarding his history and characteristics under 18 U.S.C. § 3553(a). Our analysis of sentencing is "functional." *United States v. Gunter*, 620 F.3d 642, 646 (6th Cir. 2010). This means that "we must determine whether, based on the entirety of the sentencing transcript . . . we are satisfied that the district court fulfilled this obligation." *Id.* So "[w]e are to focus less on what the transcript reveals that the court said and more on what the transcript reveals that the court did." *Id.* And we have

found a court's explanation sufficient where it states that it has considered the § 3553(a) factors, even if it does not provide extensive analysis.  *See United States v. Lapsins*, 570 F.3d 758, 774 (6th Cir. 2009).

The district court addressed the circumstances of the offenses of possession of firearms and drug trafficking; Thomas-Mathews's "eloquent allocution statement" accepting responsibility; the threat he posed to the public; the need for specific and general deterrence; his personal history, including that he did well for himself from his release from imprisonment in 2017 up until his current convictions; and his criminal history.  R. 39, Sentencing Hearing, at PageID 211–14, Page 12–15.  The court's recognition that Thomas-Mathews avoided criminal activity between 2017 and 2020 reasonably encompassed consideration of his reestablished family life, growing community ties, and barber shop ownership during that same period.  The court's discussion of Thomas-Mathews's improvement and attempt to avoid crime shows that it reviewed his record and was aware of specific mitigating factors.  *See Lapsins*, 570 F.3d at 773.  This analysis constitutes sufficient record evidence demonstrating the court's consideration of the § 3553(a) factors.  *See United States v. McBride*, 434 F.3d 470, 475 n.3 (6th Cir. 2006).  The court's failure to specifically discuss Thomas-Mathews's childhood is not error.  But even if it was, that error was not a plain one that warranted remand.  *See Vonner*, 516 F.3d at 386.

### III.

Because I would find Thomas-Mathews's sentence procedurally reasonable, I consider whether it was substantively reasonable.  We review claims of substantive reasonableness for abuse of discretion, whether the defendant objected below or not.  *United States v. Gardner*, 32 F.4th 504, 530 (6th Cir. 2022), *cert. denied sub nom. Carey v. United States*, 143 S. Ct. 251 (2022).  We presume a within-Guidelines sentence is substantively reasonable.  *Id.*  A defendant can rebut this presumption if a district court chose a sentence arbitrarily, ignored pertinent 18 U.S.C. § 3553(a) factors, or gave unreasonable weight to any single factor.  *Id.*

Thomas-Mathews relitigates his argument against the policy of the 18:1 ratio in his argument that his sentence is substantively unreasonable.  He argues that the court did not give his arguments adequate weight, and so the sentence it imposed did not "provide just

punishment." And, so his reasoning goes, because Thomas-Mathews was punished more severely for his crack cocaine offense than he would have been if he had possessed powder cocaine, his sentence failed to reflect the seriousness of his offense. We rejected this reasoning in *United States v. Simmons*, when we found that for the defendant's sentence to be substantively unreasonable, "we would have to hold not that district courts *may vary* from the Guidelines based on the disparate treatment of crack and powder cocaine, but that crack sentences are unreasonable *unless the district judge varies* from the Guidelines." 587 F.3d 348, 365–66 (6th Cir. 2009). Such an approach would not only conflict with our precedent, but with the judicial role. "Were we to act upon [Thomas-Mathews's] suggestion, we would essentially be exercising legislative power." *United States v. Caver*, 470 F.3d 220, 249 (6th Cir. 2006). Because Thomas-Mathews has not shown that the ratio's application was "unreasonable in his case, his challenge to his sentence on this ground must fail." *Id*.

Thomas-Mathews next argues that his sentence is substantively unreasonable because it was greater than necessary to comply with the sentencing purposes of 18 U.S.C. § 3553(a) considering his 120-month mandatory minimum sentence for the firearm counts. But the district court considered the conduct underlying the mandatory minimum sentence and found the fact that Thomas-Mathews's conviction resulted from the "toxic mix between possession of firearms and drug trafficking" weighed *against* a downward departure. R. 39, Sentencing Hearing, PageID 213, Page 14. This was not an abuse of discretion.

Thomas-Mathews finally argues that his sentence was substantively unreasonable because the court afforded too much weight to his criminal history and not enough to mitigating factors. The court considered Thomas-Mathews's argument about mitigating factors and rejected it. Thomas-Mathews does not overcome the heavy burden of showing his sentence was substantively unreasonable. *See United States v. Cunningham*, 669 F.3d 723, 733 (6th Cir. 2012) ("Because we are entitled to afford a sentence within the advisory Guidelines range a rebuttable presumption of reasonableness, Defendant bears a heavy burden in showing that his sentence at the low-end of his Guidelines range is unreasonable.").

## IV.

Because I would find Thomas-Mathews's sentence procedurally and substantively reasonable, I would affirm.  For these reasons, I respectfully dissent.