RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0029p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee*,

*v.*

ANTWAUN DEMETRIUS ALLEN,

> *Defendant-Appellant*.

> No. 22-2158

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:22-cr-00090-1—Hala Y. Jarbou, District Judge.

Argued: October 27, 2023

Decided and Filed: February 14, 2024

Before: WHITE, STRANCH, and NALBANDIAN, Circuit Judges.

---

### COUNSEL

**ARGUED:** Paul L. Nelson, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellant. Kathryn M. Dalzell, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Paul L. Nelson, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellant. Jonathan Roth, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

---

### OPINION

---

NALBANDIAN, Circuit Judge. Antwaun Allen pleaded guilty to possessing methamphetamine with intent to distribute. At sentencing, he sought a downward variance from his Guidelines range, raising the government's role in his offense, policy critiques of the

Guidelines' treatment of meth purity, as well as other mitigating offense and character traits.  The district court sentenced Allen to 108 months, at the bottom of his Guidelines range.

Allen makes three arguments on appeal.  First, Allen claims the sentence is procedurally unreasonable because the district court failed to address the government's provocation of his offense.  Second, Allen claims that the sentence is procedurally unreasonable because the district court impermissibly ceded its sentencing discretion to Congress.  Finally, Allen argues the sentence is substantively unreasonable because the district court exclusively relied on the meth's weight and purity, as reflected in the Guidelines, to the neglect of his "whole person."  Because we conclude his three claims lack merit, we AFFIRM.

**I.**

Allen put himself on the police's radar by distributing relatively small amounts of high-quality meth to a client.  Allen acted as a middleman, ferrying meth from a dealer in Kalamazoo, Michigan, to a client in Van Buren County.  Allen told investigators that he exclusively sold meth to this customer, a woman he knew only as "Kristen."  Allen claims that, starting in January 2022, he picked up one to five ounces of meth in Kalamazoo a couple of times per month and delivered them to Kristen.

By March 2022, the police began using Kristen as a confidential informant to conduct controlled meth purchases from Allen.  At the government's behest, Kristen contacted Allen twice to purchase relatively small amounts of meth: 68 grams on March 22, 2022, and 126 grams a week later.  A lab test revealed that the second meth purchase was 100 percent pure.  Kristen then significantly escalated her drug demand, ordering a full pound (about 453 grams) of meth on April 7, 2022.

That same day, the police stopped Allen's car on the way back from a meth run to Kalamazoo.  A search uncovered a black plastic bag containing a pound of 99-percent-pure meth.  After receiving a *Miranda* warning, Allen freely admitted he was delivering the pound of meth to Kristen.

Allen pleaded guilty to a single count of possessing methamphetamine with intent to distribute. The Presentence Investigation Report (PSR) accounted for the meth from the three controlled buys, plus a conservative estimate of the drugs Allen had delivered to Kristen before she turned confidential informant. This sum yielded an initial offense level of 34, minus 3 points for acceptance of responsibility, for a total offense level of 31. Given Allen's criminal history category of I, his total offense level of 31 yielded a Guidelines range of 108 to 135 months' imprisonment. Allen accepted the PSR, including its calculation of his Guidelines range. He then requested a downward variance through his Sentencing Memorandum and at his sentencing hearing.

Allen raised various policy critiques of the meth Guidelines, claiming (1) that their focus on quantity and purity fails to properly measure culpability, (2) that they were not developed using an "empirical approach," and (3) that the purity thresholds (unchanged since 1995) are outdated because "the Mexican cartels' increased control over the entire distribution line has increased the purity of the drug in *average* circulation." R.37, Def.'s Sent. Mem. at 7–8, PageID 109–10. Allen also highlighted various mitigating character traits, such as his steady employment history and tight-knit family bonds. Most important for this appeal, Allen argued he should not be treated as a "kingpin," given his limited history of drug dealing. *Id.* at 10, PageID 112. Allen emphasized he had "no prior history of drug trafficking." *Id.* The "principal driver of the offense level here was the amount specifically requested by law enforcement" because Allen had dealt only smaller amounts before the controlled buys started. *Id.* at 10–11, PageID 112–13.

At the sentencing hearing, the district court asked Allen to explain his request for a downward variance. Allen renewed his three primary policy arguments, while also bringing up his work history and family life again to maintain that he was an "atypical defendant," "not a kingpin" or "even a recidivist offender." R.45, Sent. Tr. at 6–7, PageID 159–60.

The district court acknowledged that the "guidelines are advisory" but used them as "a starting point" before conducting "an individualized assessment," invoking the relevant 18 U.S.C. § 3553(a) factors to guide its sentence. *Id.* at 21, PageID 174. And the court attempted to address "all the arguments" that Allen "made in support of a lower sentence" by

"going through the list," accepting that Allen had no "history of drug trafficking" and was "not this kingpin." *Id.* at 21–22, PageID 174–75. And the court noted Allen's commitment to his family and stable employment history. But it emphasized the "seriousness of the offense" and "the amounts that were involved," explaining that it was "the first time" it had "seen 100 percent purity of meth," a factor that made Allen's dealing "all the more dangerous." *Id.* at 22, PageID 175. The court expressed its agreement with Congress's decision "that certain amounts needed to be sentenced accordingly . . . because of the[ir] dangerousness." *Id.* For these reasons, the court denied the variance but sentenced Allen to 108 months, at the bottom of his Guidelines range.

After imposing the sentence, the district court asked Allen whether it had "addressed on the record all non-frivolous arguments that have been asserted"—as required by *United States v. Bostic*, 371 F.3d 865, 873 (6th Cir. 2004). R.45, Sent. Tr. at 26, PageID 179. In response, Allen restated three points for the record: (1) not all the meth sold was 100 percent pure, (2) the amount of meth was "driven by the government's request," and (3) there was no evidence in the record that he had been dealing drugs beyond the period listed by the PSR. *Id.* at 27, PageID 180. The court kept the sentence at 108 months, briefly acknowledging the first and third points—but making no comment about the second one.

Allen timely appealed.

## II.

First, we address Allen's contention that his sentence is procedurally unreasonable. Sentences are procedurally reasonable when district courts "properly calculate the guidelines range, treat the guidelines as advisory, consider the § 3553(a) factors and adequately explain the chosen sentence." *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008). The only question here is whether the district court properly explained its sentence. When "a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006). But "the lack of a detailed discussion does not constitute procedural error because 'a sentencing judge is not

required to explicitly address every mitigating argument that a defendant makes, particularly when those arguments are raised only in passing.'" *United States v. Brooks*, 628 F.3d 791, 798 (6th Cir. 2011) (quoting *United States v. Madden*, 515 F.3d 601, 611 (6th Cir. 2008)).

**A.**

Allen claims his sentence is procedurally unreasonable because the district court failed to address the government's role in his offense. This argument rests on an uncontested fact: Allen sold most of the meth calculated into his sentence during the three controlled buys. But the form of this argument has mutated over the course of this appeal, taking different shapes at Allen's sentencing, in his opening brief to us, and in his reply.

In his sentencing memo and at sentencing, Allen's argument was simple: he merited a variance because his limited dealing history meant he was not a "kingpin." R.37, Def.'s Sent. Mem. at 10, PageID 112; R.45, Sent. Tr. at 6, 11, PageID 159, 164. His references to the government's role supported this claim. Allen's sentencing memo's claim that "the amount specifically requested by law enforcement" was the "principal driver of the offense level" was the second sentence in a paragraph characterizing Allen's culpability in these exchanges. R.37, Def.'s Sent. Mem. at 10–11, PageID 112–13. Indeed, the claim followed a sentence explaining that "Allen was a very novice and inexperienced street dealer, not a 'kingpin.'" *Id.* at 10, PageID 112. And, at sentencing, Allen's reference to the "amount specifically requested by the government" preceded an explanation that "[t]here was never an amount even approaching that figure"—indicating that the reference was tied to his argument about his minor dealing history before the controlled buys. R.45, Sent. Tr. at 27, PageID 180. It also responded to the government's argument that the drug quantities showed Allen was a serious dealer because "somebody doesn't wake up one morning and sell" or "have access even to a pound of methamphetamine." *Id.* at 17, PageID 170.

So Allen raised the government's role in his offense to support an argument that he was a minor dealer rather than a "kingpin"—not to introduce another argument. The district court addressed this argument at the sentencing hearing, acknowledging that Allen was not a "kingpin" and agreeing that he lacked "any history of drug trafficking" prior to his dealings with Kristen.

*Id.* at 22, PageID 175. Since the district court addressed this argument at the sentencing hearing, there is no procedural error. *See United States v. Clayton*, 937 F.3d 630, 643 (6th Cir. 2019) ("As the district court demonstrated its consideration of these issues, we see no procedural error here.").

Allen's opening brief then recasts his variance argument as one "regarding police provocation of the offense," claiming he made this argument in both his Sentencing Memo and at his sentencing hearing. Appellant Br. at 11–13. Because the district court did not reference the controlled buys in explaining the sentence, Allen concludes it "did not address this issue at sentencing"—a procedural error. *Id.* at 12.

Under the most generous interpretation, Allen adverted to this provocation argument for the first time at sentencing in response to the *Bostic* question. R. 45, Sent. Tr. at 27, PageID 180.[1] We require a "clear articulation of any objection and the grounds therefor," to "aid the district court in correcting any error, tell the appellate court precisely which objections have been preserved and which have been forfeited, and enable the appellate court to apply the proper standard of review to those preserved." *Bostic*, 371 F.3d at 873 (quoting *United States v. Jones*, 899 F.2d 1097, 1102–03 (11th Cir. 1990), *overruled on other grounds by United States v. Morrill*, 984 F.2d 1136 (11th Cir. 1993)). Failure to state "a sufficiently articulated objection" will result in plain-error appellate review. *Id.* at 871.

Putting aside the propriety of raising an entirely new argument in response to the *Bostic* question, Allen's response to the *Bostic* question did not clearly indicate he was raising a separate argument about government provocation. Simply mentioning a fact that could support such an argument—that the controlled buys were greater than his usual meth sales—is not enough. Allen's response lacked any reference to government provocation and contained no reasoning or legal authority that would alert the district court to such an argument. Instead, raising the fact of government involvement was consistent with the argument that Allen had made in his sentencing

---

[1]The *Bostic* question provides a "last-chance approach to clarify[] objections to a criminal sentence." *United States v. Vonner*, 516 F.3d 382, 391 (6th Cir. 2008) (en banc). To "aid the district court" in addressing all arguments for a variance, defendants should generally raise all non-frivolous arguments before the question. *Bostic*, 371 F.3d at 873 (quoting *United States v. Jones*, 899 F.2d 1097, 1102–03 (11th Cir. 1990).

memorandum and at the hearing—namely, that he wasn't a "kingpin." R.37, Def.'s Sent. Mem. at 10, PageID 112; R.45, Sent. Tr. at 6, 11 PageID 159, 164. And the court had already addressed that issue.

It's true that we have, on rare occasions, found plain error even when a defendant did not raise an argument in response to the *Bostic* question. *See United States v. Wallace*, 597 F.3d 794, 803–04, 807 (6th Cir. 2010); *United States v. Thomas-Mathews*, 81 F.4th 530, 539, 543–46 (6th Cir. 2023). But when the defendant did not raise the argument in the hearing, he at least raised it in his sentencing memorandum. *See Thomas-Mathews*, 81 F.4th at 536, 543. And in those cases, we invoked the principle that a district court must address non-frivolous arguments that a defendant has raised. *See id.* at 544; *Wallace*, 597 F.3d at 803–04. And even that principle is circumscribed if the defendant is raising an argument that is "conceptually straightforward." *See United States v. Simmons*, 587 F.3d 348, 361–62 (6th Cir. 2009) (quoting *United States v. Vonner*, 516 F.3d 382, 388 (6th Cir. 2008) (en banc)). Here, Allen did not expressly raise a government provocation argument before the district court; rather, in response to the *Bostic* question, he clarified that the drug quantity "was an amount specifically requested by the government." R.45, Sent. Tr. at 27, PageID 180. As in *Vonner*, Allen's "arguments were conceptually straightforward, and the district court imposed a within-guidelines sentence," and "[o]n this record, we cannot say that any error was so plain or obvious that the judge was 'derelict in countenancing it.'" 516 F.3d at 388 (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)). Likewise, this record does not show that "[Allen]'s sentencing was marked by 'significant procedural error'" qualifying as "a plain error." *Simmons*, 587 F.3d at 363 (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)).

Allen's reply brief reconfigures this argument once more, this time into a request that we follow the lead of several sister circuits and "recognize sentencing entrapment and sentencing manipulation as legitimate sentencing considerations." Reply Br. at 3, 6–7 (collecting cases). Although Allen's reply discusses them together, these are two separate claims. Sentencing entrapment occurs when "the government induces a defendant to commit a more serious crime when he was predisposed to commit a less serious offense." *United States v. Mack*, 841 F.3d 514, 523 (D.C. Cir. 2016) (quoting *United States v. Walls*, 70 F.3d 1323, 1329 (D.C. Cir. 1995)).

And "[s]entencing manipulation occurs when the government unfairly exaggerates the defendant's sentencing range by engaging in a longer-than-needed investigation and, thus, increase[s] the drug quantities for which the defendant is responsible." *United States v. Torres*, 563 F.3d 731, 734 (8th Cir. 2009). To Allen, his case provides a clear example of both: "But for the police's efforts, Mr. Allen would have sold significantly less to Kristen and his advisory guideline range would have been significantly lower." Reply Br. at 7. So he asks us to find that the district court's failure to address sentencing enhancement or manipulation was a procedural error.

But we see no procedural error. Allen failed to raise this argument until his appellate reply brief. Before then, Allen never once mentioned "entrapment" or "manipulation." And, until the reply, Allen alleged neither that the controlled buys had induced him "to commit a more serious crime," *Mack*, 841 F.3d at 523, nor that the government had engaged "in a longer-than-needed investigation" to increase his Guidelines range, *Torres*, 563 F.3d at 734. So Allen forfeited these arguments. *See United States v. Kalymon*, 541 F.3d 624, 632 (6th Cir. 2008) ("Issues raised for the first time in a reply brief are considered waived on appeal."). We will consider the availability of sentencing entrapment or manipulation claims in our Circuit another day.

For these reasons, we reject Allen's claim that the district court erred in failing to address the government's role in his offense—in each of its three iterations.

**B.**

Allen also claims his sentence is procedurally unreasonable because the district court impermissibly ceded discretion to Congress. Allen first made this argument in a Rule 28(j) letter to the court,[2] pointing to *United States v. Thomas-Mathews*, 81 F.4th 530 (6th Cir. 2023) as supplemental authority. In *Thomas-Mathews*, we found a sentence procedurally unreasonable because the district court "impermissibly ceded its discretion to Congress" when it treated the Guidelines' "crack-to-powder ratio as effectively mandatory." 81 F.4th at 542–43.

---

[2]Rule 28(j) of the Federal Rules of Appellate Procedure allows parties to "advise the circuit clerk by letter" of "pertinent and significant authorities [that] come to a party's attention after the party's brief has been filed—or after oral argument but before decision."

Allen compares his case to *Thomas-Mathews*, claiming that the "district court's statements in the instant case similarly show that the district court impermissibly ceded its discretion to Congress." Appellant 28(j) Letter at 2. He argues that the district court rejected a downward variance because "Congress had determined that certain amounts of methamphetamine, and certain purity levels, 'need to have accountability' and 'needed to be sentenced accordingly.'" *Id.* at 1 (quoting R.45, Sent. Tr. at 12, 22, PageID 165, 175). According to Allen, these statements prove that his sentence was driven by the court's "belief that Congress decided that this amount of methamphetamine of this purity required a guideline sentence and a variance therefore was not appropriate." *Id.* at 2.

Allen did ask the district court to vary downward based on a policy disagreement with the meth Guidelines. But, on appeal, Allen failed to argue that the district court treated those Guidelines as mandatory—that is, until he sent the 28(j) letter. And we do not allow parties to raise new arguments through a 28(j) letter. *Carter v. United States*, 820 F. App'x 392, 395 n.1 (6th Cir. 2020) ("Rule 28(j) letters may not raise new arguments or issues that could have been raised previously."); *In re Lewis*, 398 F.3d 735, 748 n.9 (6th Cir. 2005) (same). So Allen's argument that the district court impermissibly ceded its discretion to vary to Congress has not been properly raised on appeal.

But, even if Allen had properly made this argument, *Thomas-Mathews* does not help him. Unlike the court there, the district court here never suggested its hands were tied by Congress. *See Thomas-Mathews*, 81 F.4th at 541–43. There, "[t]he district court repeatedly emphasized its belief that Congress, and not the courts, should determine sentencing for crack and powder cocaine." *Id.* at 542. In contrast, here, the court's comments show it understood its power to vary from the Guidelines. The court saw its job as making an "individualized assessment," accepting the Guidelines as "advisory," only a "starting point," and just "one factor." R.45, Sent. Tr. at 12, 14, 21, 24, PageID 165, 167, 174, 177. The court addressed various mitigating facts and did not merely defer to the Guidelines. And the court did not simply reject Allen's policy arguments for a variance by deferring to Congress's judgment. Instead, the court invoked its own experience, noting it was the first time it had seen 100 percent purity meth, which it emphasized made Allen's dealing "all the more dangerous" to the community. *Id.* at 22, PageID

175. So Allen's claim that the district court impermissibly ceded its discretion to Congress is belied by the record.

**III.**

Finally, Allen claims his sentence is substantively unreasonable because the district court "based the sentence on only one factor—the guideline range based on the weight and purity of the methamphetamine sold." Appellant Br. at 16. He contends that policy flaws in the meth Guidelines rendered them a "poor indicator of culpability," at least in his case.[3] *Id.* By sentencing Allen within a flawed Guidelines range, "the district court failed to properly consider" Allen's "whole person"—ignoring both "the offense-related issues" and his "personal characteristics." *Id.* at 24, 26 (citing *Concepcion v. United States*, 597 U.S. 481, 491 (2022)).

We give "a rebuttable presumption of reasonableness to a properly calculated, within-Guidelines sentence," such as Allen's. *United States v. Graham*, 622 F.3d 445, 464 (6th Cir. 2010). The question before us is not whether Allen's sentence best serves the aims of sentencing—only whether the district court could reasonably choose to impose it. A sentence is substantively unreasonable only when "the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008).

Allen's attempt to rebut the presumption of substantive reasonableness fails. First, the district court did not err in refusing to "vary from the applicable guideline range based solely on" Allen's policy critique of the Guidelines. *See* Appellant Br. at 16. To be sure, district courts may vary from the Guidelines for policy reasons alone. *Kimbrough v. United* States, 552 U.S. 85, 106–07 (2007). But district courts need not depart from the Guidelines whenever defendants assert a policy critique. *Brooks*, 628 F.3d at 800 ("[T]he fact that a district court *may* disagree

---

[3]Allen's policy critique of the meth Guidelines includes claims: (1) that they are not based on an "empirical approach" but on "the statutory mandatory minimum sentences established by Congress in the hastily-enacted Anti-Drug Abuse Act of 1986 (ADAA)," Appellant Br. at 18, (2) that they lead to "unjustified sentencing disparities," *id.* at 19, and (3) that they "focus on quantity and purity" of drugs sold, "minimiz[ing] the significance of other relevant factors," *id.* at 22.

with a Guideline for policy reasons and *may* reject the Guidelines range because of that disagreement does not mean that the court *must* disagree with that Guideline or that it *must* reject the Guidelines range if it disagrees."). The district court did not abuse its discretion by staying within the Guidelines range despite Allen's policy critiques—however persuasive this court may (or may not) find them.

Second, the district court did not place an unreasonable, much less exclusive, weight on "the guideline range based on the weight and purity of the methamphetamine sold." *See* Appellant Br. at 16. Contrary to Allen's claim, the court did not base Allen's sentence solely on the weight and purity of the meth he sold–or even on the Guidelines alone.[4] The district court relied on the Guidelines as a "starting point." R.45, Sent. Tr., at 20–21, PageID 173–74. And, to be sure, the court highlighted the meth's high purity to show the danger Allen's dealing created for his community. But the court also considered "the nature and circumstances of the offense" as well as Allen's "history and characteristics." *Id.* at 21, PageID 174. The court's decision to sentence him within the Guidelines stemmed not from disregard for these mitigating factors, but from an assessment that they did not sufficiently outweigh the gravity of his offense to justify a variance.

The district court's decision to sentence Allen at the very bottom of the range confirms that it properly considered Allen's "whole person"—suggesting it considered these mitigating factors to give Allen a lower sentence, though still within the Guidelines range. Deeming Allen's sentence substantively unreasonable would mean finding a district court abuses its discretion by choosing a sentence *within* the Guidelines range after considering all relevant factors—an outcome at odds with our precedents.[5] "Doing so would essentially amount to substituting our judgment for the district court's as to how long the defendant should serve." *United States v.*

---

[4]Allen argues that the district court's reliance on the Guidelines range indicates it considered only the drugs' "weight and purity to the exclusion of other relevant sentencing factors." Appellant Br. at 16. But Allen's Guidelines range, of course, derived from factors on top of the drugs' weight and purity, including his acceptance of responsibility and criminal history. In any event, although the Guidelines' calculation incorporated factors beyond the drugs' weight and purity, the district court considered other factors beyond the Guidelines range.

[5]We need not consider Allen's argument that his sentence was rendered substantively unreasonable by the district court's failure to address "the government's role in the offense," since the argument was first raised by his reply brief. Reply Br. at 8; *see Kalymon*, 541 F.3d at 632.

*Collington*, 461 F.3d 805, 811 (6th Cir. 2006) (affirming a sentence *outside* the Guidelines range).

**IV.**

For these reasons, we AFFIRM.