NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0097n.06

No. 24-3304

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Feb 19, 2025

KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) ) | |
| WILLIE EARL JACKSON, | ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

Before: MOORE, KETHLEDGE, and BLOOMEKATZ, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Willie Earl Jackson, a former college athlete and semi-professional basketball player, was charged with dealing firearms without a license and trafficking firearms after an undercover investigation by the Bureau of Alcohol, Tobacco, and Firearms. During the investigation, Jackson sold more than 30 firearms and accessories, including to individuals who stated that they were convicted felons or planned to transport the firearms abroad. He also told agents that he could obtain silencers and switches, devices that turn semi-automatic pistols fully automatic. After Jackson pleaded guilty to the charges, the district court sentenced him to 84 months in prison, a sentence toward the top end of the guideline range. On appeal, Jackson challenges the substantive reasonableness of the district court's sentence. We AFFIRM.

**I. BACKGROUND**

Jackson first interacted with law enforcement in April 2022 when agents from the Bureau of Alcohol, Tobacco, and Firearms ("ATF") arranged a meeting to discuss Jackson's purchase of

several guns. R. 54 (Presentence Investigation Report ("PSR") ¶ 6) (Page ID #439).[1] Jackson told agents that he was a "gun enthusiast who would sell guns when he was in Cleveland" but denied knowingly selling guns to "someone who should not have one." *Id.* During that meeting, Jackson signed a "Warning of Straw Purchasing Letter" acknowledging that it was illegal to buy a firearm for or on behalf of another person while having reason to know that the buyer was a prohibited transferee or that the buyer intended to possess or transfer the firearm in furtherance of a felony. *Id.*

A year later, in June 2023, ATF began an investigation into an alleged drug and firearm trafficker known as Corte'z Buggs. *Id.* ¶ 7 (Page ID #439). A series of undercover drug and firearm purchases from Buggs led ATF agents back to Jackson, whom Buggs identified as a source of his firearm supply. *Id.* ¶¶ 7–11 (Page ID #439–40). From June through August 2023, undercover ATF agents and confidential informants bought "more than 30 firearms, ammunition, and firearms accessories/parts" from Jackson. *Id.* ¶ 30 (Page ID #443). Jackson told controlled buyers that "he was in the business of selling firearms and could make custom firearms and obtain Glock switches," attachments that convert semi-automatic pistols into automatic ones. *Id.* ¶ 12 (Page ID #440); *see id.* ¶ 13 (Page ID #440) ("engag[ing] in conversation about his ability to obtain Glock switches (machine gun conversion devices) and silencers"); *id.* ¶ 15 (same) (Page ID #440); *id.* ¶ 18 (Page ID #441) (offering to sell firearms with "remove[d] serial numbers" and "silencers").

---

[1]Because Jackson did not object to the facts set forth in the PSR, we treat those facts as admitted. *See* Fed. R. Crim. P. 32(i)(3)(A); *United States v. Stafford*, 258 F.3d 465, 476 (6th Cir. 2001).

In the series of controlled buys, Jackson sold firearms to an individual who said they were a felon and at least one individual who said they planned to transport the firearms to Mexico. *Id.* ¶¶ 13, 30 (Page ID #440, 443). He also sold a firearm with a "partially obliterated" serial number and a firearm that had been used in three different shootings in Cleveland. *Id.* ¶¶ 15, 20 (Page ID #440–41). He suggested selling firearms without the requisite ATF paperwork and offered to create a new identity for the self-identified felon, including a "fake Social Security card, passport, and credit history." *Id.* ¶¶ 13–14 (Page ID #440). Further investigation revealed that six other firearms purchased by Jackson were "recovered by law enforcement between 2018 and 2022" in Cleveland, Toledo, Mentor, Maple Heights, and New York City. *Id.* ¶ 30 (Page ID #443).

Jackson was arrested on August 10, 2023, and indicted on one count of dealing firearms without a license, in violation of 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D) (Count 1), and one count of trafficking in firearms, in violation of 18 U.S.C. § 933(a)(1) (Count 2). *Id.* ¶ 31; R. 12 (Indictment at 1–4) (Page ID #43–46). Jackson pleaded guilty to both counts of the indictment without a plea agreement. R. 72 (Plea Hr'g Tr. at 15) (Page ID #597). At sentencing, the parties agreed that Jackson's sentencing guideline total offense level was 27, which accounted for upward enhancements relating to the number of firearms sold, the sale of a firearm with a partially obliterated serial number, and the sale of firearms to individuals who indicated that they were felons or intended to transport the firearms abroad, as well as downward adjustments for acceptance of responsibility. R. 75 (Sent'g Tr. at 5–6) (Page ID #644–45). The parties also agreed that Jackson had no meaningful criminal history, so his criminal history score was I. *Id.* at 6 (Page ID #645). Hence, his guideline imprisonment range was calculated as 60 months (the statutory maximum) on Count 1, and 70 to 87 months on Count 2. *Id.*

3

Jackson's counsel sought a downward variance. He portrayed Jackson as a man who grew up in a "tough area" but managed to secure a college scholarship to play basketball at the University of Toledo, and then played semi-professionally abroad. *Id.* at 9 (Page ID #648). He emphasized that Jackson had given back to his community by starting a charity that provides gifts to underprivileged children, and that he had no prior criminal history. *Id.* at 10, 12 (Page ID #649, 651). Jackson's counsel further argued that the guideline range was disproportionate to the crime, considering that it was ATF agents who made statements indicating that they were felons or planned to transport firearms to Mexico, and that "obviously the agents have a full understanding of the enhancements." *Id.* at 8 (Page ID #647).

The district court rejected defense counsel's arguments. In the district court's view, Jackson's achievements only highlighted the gravity of his offense conduct. *See id.* at 30–31 (Page ID #669–70). "[H]is athletic ability gave him the option and the opportunity to obtain an education, to rise above whatever difficulty he may have faced in the community. Instead, . . . he chose a different path, and that path is one that has landed him here." *Id.* at 30 (Page ID #669). The district court emphasized that Jackson had received a warning letter from ATF about selling firearms to people like Buggs but nonetheless proceeded to sell numerous firearms. *Id.* at 30–31 (Page ID #669–70). And the district court explained that a lengthy sentence was warranted in part because the case was not only "about guns," but it was also "about switches" and "silencers." *Id.* at 32 (Page ID #671). The district court sentenced Jackson to 60 months on Count 1, and 84 months on Count 2, to be served concurrently. R. 62 (Judgment at 2) (Page ID #544).

On appeal, Jackson argues that his sentence is substantively unreasonable because the district court "improperly relied upon his alleged involvement with the sale or transfer of

'switches' and 'silencers'" when he was not charged with selling any retrofitted firearms, and the district court failed adequately to consider mitigating evidence, disparities with similarly situated defendants, and the disproportionately high guideline range occasioned by the enhancements. Appellant Br. at 22–23.

## II. ANALYSIS

We review sentences in criminal cases for procedural and substantive reasonableness. *Gall v. United States*, 552 U.S. 38, 51 (2007). Procedural reasonableness ensures that the defendant received adequate process at sentencing. It requires that the court "properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018). Even if the sentencing court followed the proper procedures, a sentence may still be substantively unreasonable if the judge "'abused his discretion in determining that the § 3553(a) factors supported' the sentence imposed," that is, if the judge imposed a sentence that was greater than necessary to satisfy the § 3553(a) factors. *Holguin-Hernandez v. United States*, 589 U.S. 169, 173 (2020) (quoting *Gall*, 552 U.S. at 56)). "In short, procedural review of a sentence concerns the propriety of the factors that go into a sentence; substantive review assesses the reasonableness of the sentence that results." *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020). If a defendant challenges the substantive reasonableness of a within-guidelines sentence, we apply a presumption of reasonableness. *Id.* at 754. "We review claims of both procedural and substantive unreasonableness for an abuse of

discretion, although we review the district court's factual findings for clear error and its legal conclusions de novo." *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019).[2]

Jackson argues that his 84-month sentence is substantively unreasonable. Because the sentence fell within the uncontested guideline imprisonment range, we apply a presumption of reasonableness. Jackson tries to overcome that presumption by pointing to factors that he argues were over- or under-weighed by the district court. We address each in turn.

First, Jackson argues that the district court should have given less weight to the guidelines, considering that the offense level was driven by enhancements that resulted from the specific conduct of the undercover agents and informants who told Jackson that they were felons or planned to transport weapons abroad. Appellant Br. at 26–27. Jackson did not expressly invoke sentencing entrapment or manipulation, which this circuit has yet to recognize as a basis for downward variance. *See United States v. Allen*, 93 F.4th 350, 357 (6th Cir. 2024). We need not pass on the potential validity of such an argument because it has little persuasive force here. The record contains evidence that Jackson was engaged in a sizeable firearm-trafficking operation, and that he was eager to provide undercover agents and confidential informants with firearms regardless of legal requirements. *See United States v. Hammadi*, 737 F.3d 1043, 1049 (6th Cir. 2013) (concluding that a defendant failed to demonstrate sentencing entrapment or manipulation

---

[2]Although Jackson characterizes his appeal as solely aimed at the substantive reasonableness of his sentence, the government urges that Jackson's appeal concerns both procedural and substantive aspects of his sentence. Specifically, the government argues that Jackson's contention that the district court improperly relied on allegations that he sold firearms with "switches" and "silencers," when none of the firearms sold in this case included such attachments, Appellant Br. at 28, 30, is an argument about procedural reasonableness. And the government contends that we should review this challenge for plain error because Jackson's counsel failed adequately to object to the district court's portrayal of the facts at the sentencing hearing. Appellee Br. at 12–14. Jackson did not file any reply brief responding to the government's arguments as to procedural reasonableness, forfeiture, or plain error. Accordingly, we consider only Jackson's argument regarding substantive reasonableness.

because he had not met his burden to show a lack of predisposition to engage in the charged conduct). Especially noteworthy, Jackson undisputedly told the purported felon that he "could create a new identity for the price of $3,000 to include a fake Social Security card, passport, and credit history." R. 54 (PSR ¶ 13) (Page ID #440).

Second, Jackson asserts that the district court "gave an unreasonable amount of weight" to evidence that Jackson sold silencers and switches—even though no such attachments were sold as part of a controlled buy in this case. Appellant Br. at 28. However, in pronouncing its reasons for the sentence, the district court said only that the case was "about switches" and "about silencers," not that Jackson actually sold them. R. 75 (Sent'g Tr. at 32) (Page ID #671). And the record contained evidence that in the context of four separate firearm purchases, Jackson indicated his ability to obtain switches and silencers. R. 54 (PSR ¶¶ 12–13, 15, 18) (Page ID #440–41). Accordingly, it was reasonable to afford some weight to the role of such devices in this case.

Third, Jackson argues that the district court gave insufficient weight to his background, good character, lack of criminal history, community involvement, and exemplary conduct while in pretrial detention. Appellant Br. at 30–31. In fact, the district court considered this information, recognizing that Jackson's own life had been affected by gun violence, and that he had both education and opportunity. R. 75 (Sent'g Tr. at 30) (Page ID #669). The district court just saw that information in a different light from how Jackson sees it: in the district court's view, the opportunities Jackson had in life and his personal experience with gun violence made his criminal activity more egregious. *Id.* We cannot conclude that this was an abuse of discretion in the context of this case because his conduct does not appear to be aberrant; rather, the record suggests that Jackson was engaged in a sizeable firearm-trafficking operation involving

7

individuals also engaged in the trafficking of illegal drugs. Under these circumstances, it was not an abuse of discretion for the district court to consider Jackson's history and characteristics in this light.

Finally, Jackson contends that the district court should have given more weight to the disparity between his sentence and the sentences of others with the same offense level and criminal history category. Appellant Br. at 27. As the district court recognized, for individuals like Jackson with an offense level of 27 and a criminal history category of I, the average sentence is 53 months of imprisonment, and the median is 60 months. R. 75 (Sent'g Tr. at 29–30) (Page ID #668–69). The district court reasonably concluded that a downward variance to the average or median sentence was not warranted here. Beyond the reasons explained above, the district court also noted that Jackson had received forewarning from ATF about selling guns to individuals who planned to use them in criminal activity. *Id.* at 30–31 (Page ID #669–70). Nonetheless, Jackson continued to traffic heavily in firearms, including firearms that had been used in violent crimes. *Id.* at 31–32 (Page ID #670–71).

"[H]ow much weight a judge gives to any § 3553(a) factor is 'a matter of reasoned discretion' to which we owe 'highly deferential review.'" *United States v. Richardson*, 960 F.3d 761, 765 (6th Cir. 2020) (per curiam) (quoting *Rayyan*, 885 F.3d at 442). We cannot conclude that Jackson's within-guidelines sentence of 84 months of imprisonment was substantively unreasonable.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM.