NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0466n.06

Case No. 24-3589

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 15, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| RICHARD CONFER, | ) | DISTRICT OF OHIO |
| Defendant-Appellant. | ) ) | |
| | ) | OPINION |

Before: COLE, KETHLEDGE, and NALBANDIAN, Circuit Judges

**NALBANDIAN, Circuit Judge.** Defendant Richard Confer pleaded guilty to two counts of distributing meth. His recommended sentencing range was 108–135 months. The district court sentenced Confer to 97 months, shaving nearly a year off the recommended range's bottom-end. Confer appeals, arguing that his sentence is both procedurally and substantively unreasonable. We disagree, so we affirm.

**I.**

During the summer of 2023, county police caught Defendant Richard Confer dealing drugs three times. The first two times, the officers enlisted a confidential informant to pose as a buyer. On both occasions, Confer invited the informant to his home to make the sale. The first buy, in April, yielded a mixture of 96% purity that contained about 27 grams of meth. The second transaction, in May, netted 28 grams of 100% pure meth. Confer used a scale to parcel out both

sales from a "gallon-size Ziploc bag" of meth he kept under his chair.  R.35, Sent. Tr., p.10, PageID 219.

The third bust happened more organically.  Instead of using the confidential informant, officers surveilled Confer's residence to watch for real-life drug sales.  They didn't have to wait long.  In July, officers observed a man arrive at Confer's house and leave just eight minutes later.  The visitor swerved as he drove off, so the officers pulled him over.  After waiving his Miranda rights, the visitor admitted that he was a buyer, and that Confer had just sold him some meth.  The meth seized from the buyer weighed about 6.6 grams, though its purity isn't clear from the record.

Following those incidents, the government filed a criminal complaint seeking a warrant for Confer's arrest.  The officers executed that warrant, and a federal grand jury returned a two-count indictment charging Confer for violating 21 U.S.C. § 841(a)(1) and (b)(1)(B) during each controlled buy.  The indictment didn't charge Confer for the third drug bust.

Confer pleaded guilty to both counts.  Upon accepting his guilty plea, the district court referred the matter to pretrial services for the preparation of a presentence investigation report (PSR).  The PSR calculated Confer's recommended sentencing range under the United States Sentencing Guidelines (U.S.S.G.), finding an offense level of 29 and a criminal history category of III.  Those two variables correspond to a recommended sentencing range of 108–135 months' imprisonment.

Confer objected to the PSR's Guidelines calculation.  Specifically, he questioned the PSR's application of the two-level "stash-house" enhancement from U.S.S.G. § 2D1.1(b)(12), which applies when a defendant "maintained a premises for the purpose of manufacturing or distributing a controlled substance."  In Confer's view, selling drugs out of his home "was an incidental or collateral use" of the property.  R.30-1, Objection, p.1, PageID 188.  And because a relevant

2

Guidelines application note says that distributing a controlled substance "must be one of the defendant's primary or principal uses" of the property, rather than an "incidental or collateral use[]," the PSR shouldn't have applied the enhancement. *Id.* (citing U.S.S.G. § 2D1.1(b)(12) cmt. n.17).

At the sentencing hearing, the district court overruled Confer's objection and adopted the PSR's Guidelines calculation without modification. It ruled that Confer's conduct cleared the primary-use requirement's "low bar," as described by Sixth Circuit caselaw. R.35, Sent. Tr., pp.14–15, PageID 223–24; *United States v. Leggett*, 800 F. App'x 378, 381 (6th Cir. 2020). Specifically, his bulk storage of meth in a gallon-size Ziploc and use of a digital scale to parcel out smaller, individually salable amounts warranted the enhancement.

Having established the Guidelines calculation on the record, the district court considered the 18 U.S.C. § 3553 sentencing factors. One of those factors requires the sentencing court to account for "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Citing that provision, Confer took another stab at a lower sentence by arguing that the Guidelines' heavy-handed approach to "pure" meth—that is, any mixture that's at least 80% meth, U.S.S.G. § 2D1.1(c) n.(C)—would result in a sentencing disparity. As far as we can tell, his argument boils down to the policy-based assertion that pure meth isn't meaningfully worse (from a culpability standpoint) than mixed meth, so treating the former more harshly constitutes an unwarranted disparity. The district court rejected that argument, but only halfway. It declined to depart from the Guidelines' differential treatment of pure and mixed meth, but it agreed that the Guidelines range might lead to a disparate sentence for a different reason: statistics. At the hearing, the probation officer informed the district court that other defendants sentenced under the same

3

Guidelines provision, with the same offense level and criminal history category, received a median sentence of 84 months and an average sentence of 86 months. Taking those data points into account, along with the other § 3553 factors, the district court sentenced Confer to a substantially below-Guidelines term of 97 months' imprisonment.

Confer appealed. He now argues that his sentence is procedurally and substantively unreasonable[1] for the same reasons he raised before the district court: (1) the stash-house enhancement shouldn't apply to his conduct, and (2) the Guidelines' "antiquated" treatment of pure methamphetamine led to a disparate outcome in his case. Appellant Br., p.4. The government counters that the district court applied the stash-house enhancement in line with well-settled caselaw, and that the district court adequately considered the risk of disparate sentencing when it conducted the multi-factor balancing required by § 3553. The government has the better argument, so we affirm.

## II.

We review a district court's sentencing decision for reasonableness. This review has both a procedural and a substantive component. *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008). Sentences are procedurally reasonable "when district courts 'properly calculate the guidelines range, treat the guidelines as advisory, consider the § 3553(a) factors and adequately explain the chosen sentence.'" *United States v. Allen*, 93 F.4th 350, 355 (6th Cir. 2024) (quoting *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008)). And they're substantively

---

[1] Confer doesn't specify which of his arguments are procedural or substantive. Procedural arguments include claims that the district court improperly calculated the Guidelines' recommended sentencing range. *See United States v. Allen*, 93 F.4th 350, 355 (6th Cir. 2024). And substantive arguments include those that take issue with the district court's balancing under the § 3553(a) factors in determining the defendant's actual sentence. *Id.* at 359. Because Confer's first assignment of error tracks the former, and his second tracks the latter, we agree with the district court that one is procedural and the other is substantive.

reasonable if "the district court could reasonably choose to impose it," even if the reviewing court would select a different sentence. *Id.* at 359; *see also Gall v. United States*, 552 U.S. 38, 51–52 (2007). Alternatively, a sentence is substantively unreasonable "only when 'the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor.'" *Allen*, 93 F.4th at 359 (quoting *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008)). We presume reasonableness when a sentence falls within the correctly-calculated Guidelines range. *Id.* And when, as here, the district court imposes a below-Guidelines sentence, that presumption is even stronger. *Curry*, 536 F.3d at 573–74*; see also United States v. Greco*, 734 F.3d 441, 450 (6th Cir. 2013).

### III.

Confer raises two arguments on appeal. First, he claims that the district court erred in applying the Guidelines' stash-house enhancement, rendering his sentence procedurally unreasonable. Second, he says that the district court erred by failing to consider sentencing disparities that result from the Guidelines' harsher treatment of pure meth, making his sentence substantively unreasonable. Neither argument persuades.

### A.

Start with the procedural point. Confer argues that the district court calculated his Guidelines range incorrectly by using the stash-house enhancement to increase his offense level by two points. The enhancement applies to a defendant who "(1) knowingly (2) opens or maintains any place (3) for the purpose of manufacturing or distributing a controlled substance." *United States v. Bell*, 766 F.3d 634, 636–37 (6th Cir. 2014) (internal quotation marks omitted). The third element—the only one that Confer contests—requires that "one of the 'primary or principal uses

5

for the premises' was manufacturing or distributing drugs." *United States v. Lake*, No. 23-1454, 2024 WL 4977141, at *6 (6th Cir. Dec. 4, 2024) (quoting U.S.S.G. § 2D1.1(b)(12) cmt. n.17).  But as this Court has explained elsewhere, "[d]rug manufacture or distribution need not be *the* primary purpose of a residence for the enhancement to apply, only *a* primary purpose." *United States v. Allen*, No. 21-3900, 2022 WL 7980905, at *2 (6th Cir. Oct. 14, 2022) (emphasis in original) (citing *Bell*, 766 F.3d at 638).  This is a "relatively low bar." *Leggett*, 800 F. App'x at 381. So "[d]rug storage on the property and transactions on the property will usually suffice." *Bell*, 766 F.3d at 638.  The enhancement applies if the home "played a significant part" in Confer's drug distribution. *United States v. Johnson*, 737 F.3d 444, 449 (6th Cir. 2013).

Confer's home did just that.  He doesn't dispute that he "had a gallon-size Ziploc bag underneath his chair," from which he parceled out smaller amounts for individual transactions using a scale he had at the ready.  R.35, Sent. Tr., p.10, PageID 219.  That covers both drug storage and drug transactions.  And those two features are generally sufficient to apply the stash-house enhancement.  *See Bell*, 766 F.3d at 638; *see also Leggett*, 800 F. App'x at 381 (affirming application of the stash-house enhancement where officers found a scale and bulk amounts of drugs on the property).

The only argument Confer raises to the contrary is that he primarily used his home to watch TV and relax.  That's all well and good.  But a defendant "can maintain a premises for more than one purpose." *Bell*, 766 F.3d at 638.  So even if one of Confer's primary uses of his home was residential, the undisputed evidence supports a finding that another primary use was meth distribution.  For that reason, the district court didn't err by increasing Confer's offense level by two points under U.S.S.G. § 2D1.1(b)(12).

**B.**

Now for Confer's substantive argument. He claims that the district court erred by rejecting his argument that the Guidelines' disparate treatment of pure and mixed meth creates "unwarranted sentencing disparities between methamphetamine and other drugs." Appellant Br., p.8. It's true that the Guidelines assign longer sentences to offenses involving pure meth than mixed meth. *See* U.S.S.G. § 2D1.1(c) n.(C). Indeed, the Guidelines' Drug Quantity Table treats pure meth ten times more harshly: Crimes involving two grams of pure meth carry the same base offense level as those involving twenty grams of mixed meth, and so on. *See generally id.* Confer asserts that the differential treatment is "antiquated and no longer useful." Appellant Br., pp.4, 9–10. The district court considered Confer's substantive critique on the record and rejected it, finding that "whether it's pure . . . the fact remains that methamphetamine, generally speaking, is a dangerous drug, the use of which can hurt the individual using it as well as the family and our community." R.35, Sent. Tr., pp.27–28, PageID 236–37.

Confer's policy argument doesn't overcome the heightened presumption of reasonableness that applies to his below-Guidelines sentence. Although district courts "*may* vary from the Guidelines for policy reasons alone," they need not do so "whenever defendants assert a policy critique." *Allen*, 93 F.4th at 359 (emphasis added). And apart from its rejection of his policy critique, Confer can't point to any other substantive deficiency in the district court's analysis of the § 3553(a) factors. So the district court didn't err because it had no obligation to agree with Confer's policy argument.

Instead, the court gave Confer a below-guidelines sentence for other reasons. Specifically, the district judge looked at sentencing data, which showed a gap between Confer's recommended Guidelines range and actual sentences imposed on similar defendants. As to the thirty-five

similarly situated defendants (i.e., those with the same offense level and criminal history category as Confer) whom the court considered, their average term of imprisonment was 86 months. So to avoid any unwarranted disparity between those individuals and Confer, the district judge varied down from the Guidelines' recommended range, while still accounting for all the other § 3553(a) factors. The district court acted well within its discretion.

## IV.

For those reasons, we affirm.