RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0274p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

CORWIN MONTE JETT, JR.,

*Defendant-Appellant*.

> No. 24-1667

───────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:23-cr-00009-1—Jane M. Beckering, District Judge.

Argued: June 11, 2025

Decided and Filed: October 7, 2025

Before: WHITE, LARSEN, and MURPHY, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Melissa M. Salinas, Sofia Acker, Alexander Lopez, UNIVERSITY OF MICHIGAN, Ann Arbor, Michigan, for Appellant. Vito S. Solitro, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Melissa M. Salinas, Sofia Acker, Alexander Lopez, UNIVERSITY OF MICHIGAN, Ann Arbor, Michigan, for Appellant. Vito S. Solitro, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

LARSEN, J., delivered the opinion of the court in which WHITE and MURPHY, JJ., concurred. WHITE, J. (pg. 19), delivered a separate concurring opinion.

————————————

**OPINION**

————————————

LARSEN, Circuit Judge.   Corwin Jett pleaded guilty to possession with intent to distribute methamphetamine.  Almost three years passed between his commission of the crime and his arrest.  In the interim, he moved to Atlanta, got a job, and had no criminal encounters with the police.  Yet, after his arrest in Michigan, Jett attempted to smuggle drugs into jail, sought drugs from other inmates, and was caught with drugs in his cell.  The district court denied Jett an acceptance-of-responsibility reduction and denied his request for a downward variance.  Jett argues that his sentence was procedurally unreasonable.  For the reasons stated below, we AFFIRM.

I.

In October 2020, police in Kalamazoo, Michigan received a tip from a confidential informant that Corwin Jett was selling methamphetamine that he had acquired from Las Vegas.  Jett was on probation for three episodes of drunk driving at the time.  Over the next two months, local police and U.S. postal investigators gathered evidence that Jett was sending packages of methamphetamine from Las Vegas to various locations in Michigan, including to his uncle's home in Kalamazoo.

In late November, a canine alerted federal investigators to the presence of narcotics in a package Jett had mailed from Las Vegas to his uncle's residence.  Federal investigators obtained a search warrant for the package and found nearly seven pounds of methamphetamine inside, some of which they placed back in the package.  The investigators then obtained an anticipatory search warrant and delivered the package to Jett's uncle's home.  Jett retrieved the package from outside his uncle's home and brought it inside.  Investigators then entered the home and seized the package along with other drug trafficking paraphernalia and multiple firearms.  Federal investigators simultaneously executed a search warrant on Jett's residence, seizing methamphetamine, cocaine, approximately $45,000 in cash, and a hidden, loaded 9mm pistol.

During his post-arrest interview, Jett waived his *Miranda* rights and admitted his involvement in drug trafficking, his possession of the 9mm pistol, and that the packages the police had investigated contained drugs.  He was arrested and lodged at the Kalamazoo County Jail for possession of illegal substances and firearms while on state probation.  He remained in custody for two days.

After Jett was released from custody, he found a job.  He returned to state custody to serve a three-month sentence for his probation violation, and then moved to Atlanta during the summer of 2022.  Federal officials had not indicted Jett for any federal crimes at this point.  During his year in Atlanta, Jett was employed and had no record of criminal activity.

On February 1, 2023, while Jett was in Atlanta, a federal grand jury in Michigan indicted him for (1) one count of possession with intent to distribute methamphetamine; (2) one count of possession with intent to distribute controlled substances; and (3) one count of being a felon in possession of a firearm.  A warrant issued for his arrest the next day.  According to the government, the delay in indicting Jett was due to a change in government staffing, including the person handling Jett's case.  The government would later tell the district court that it could "hold that against [the government]" if it wished to.  R. 73, Sent. Tr., PageID 316.

In August 2023, Jett returned to Michigan for a funeral and police arrested him at a liquor store with an illegal firearm in his front pocket.  His arrest warrant had been outstanding for six months at that point.  Three weeks later, in September 2023, a grand jury returned a superseding indictment, adding an additional felon in possession charge to the prior drug and gun charges.

Jett was originally released on bond on condition that he reside at the Kalamazoo Probation Enhancement Program, not consume alcohol, and be subject to GPS monitoring.  While out on bond, Jett repeatedly violated his location monitoring requirement and tested positive for alcohol multiple times.  At his bond revocation hearing, Jett's probation officer suspected that he was intoxicated.  The probation officer administered a breathalyzer immediately after the hearing.  Jett's blood alcohol was more than three times the legal limit.

Jett was re-arrested and confined at the Newaygo County Jail.  In jail, Jett's destructive behavior continued.  In February 2024, Jett tried to smuggle synthetic cannabinoids, known as

K2, into the jail through his child's mother, J.S.  Monitored jail phone calls and e-mails revealed Jett had provided J.S. with detailed instructions on how to package drugs to evade detection.  Jail officials intercepted a package sent from "Justice Jones" to "Travon Mansker," an inmate housed in Jett's pod.  R. 73, Sent. Tr., PageID 297.  The package contained documents which tested positive for K2.  The day officials intercepted the package, J.S. told Jett that she had sent the package using the name "Justice Jones."  R. 59, Gov. Sent. Mem., PageID 209.

Three weeks after the attempted K2 smuggling, Jett pleaded guilty to one count of possession with intent to distribute methamphetamine.  During a probation interview to compile his Presentence Report (PSR), however, Jett "adamantly denied being involved" in any K2 smuggling.  In response, the probation officer gave Jett ten minutes to speak privately with legal counsel about continuing in this denial.  Jett persisted.  After the interview, the government emailed Jett's counsel the evidence it would present at the sentencing hearing if Jett continued to deny involvement.  Jett responded that he would admit to the smuggling and the probation office issued an initial PSR, which recommended that Jett receive a reduction for acceptance of responsibility but noted "reservations" because of Jett's repeated denials during the interview.  R. 55, Initial PSR, PageID 151.  Jett later changed his mind, however, and his counsel notified the government that Jett did not intend to admit responsibility for the K2.  The probation office thus issued a new PSR recommending that Jett not receive the reduction.

At sentencing, Jett argued that he should receive the acceptance-of-responsibility reduction because he never attempted to obtain K2.  In response, the government presented Jett's phone and email conversations with J.S., and the testimony of a Newaygo County Sheriff's Office sergeant.  The sergeant testified that he had seized the package containing K2 and that, after Jett pled guilty, Jett was caught trying to "fish" for a package of K2 by throwing a device with a string attached to another inmate pod to obtain drugs.  R. 73, Sent. Tr., PageID 298–300.  After this incident, deputies searched Jett's cell where they found K2 among his belongings.

The district court credited the sergeant's testimony and denied Jett the reduction.  Although the court noted that the guilty plea weighed in Jett's favor, the court concluded that Jett's continued drug activity in jail, and his denial of it, showed that he had not accepted responsibility for his methamphetamine offense.

Jett also asked for a downward variance on the ground that, while in Atlanta, he had gainful employment and had led a crime-free life.  After considering the § 3553 factors, the court denied Jett's request for a downward variance on this ground.  The court noted that "we do not have evidence of a criminal record while [Jett was] in Atlanta." *Id.* at 318.  But the court also considered that when he was arrested in Michigan, he illegally possessed a firearm, though the court took account of Jett's explanation that he had the gun for self-protection.

Nonetheless, the court still varied downward on the ground that Jett had lacked "youthful guidance." *Id.* at 321.  Explaining that the recommended sentence, "30 years," was "too much," the court sentenced Jett to 300 months in prison, 60 months below the low-end of the Guidelines range. *Id.* at 322.

The court then asked Jett whether he had "any objections to the sentence just pronounced that [he had] not previously raised?" *Id.* at 323.  Defense counsel responded, "No, Your Honor." *Id.* at 324.  The court next asked defense counsel if he was "satisfied that [the court] sufficiently addressed on the record all non-frivolous arguments asserted?" *Id.*  Defense counsel responded, "Yes, Your Honor." *Id.*  Jett now appeals his sentence.

II.

A.

Jett argues that the district court erred by basing its decision to deny him an acceptance-of-responsibility reduction on irrelevant conduct.  We disagree.

We review a district court's determination that a defendant has not accepted responsibility for clear error, and that judgment is entitled to "great deference." *United States v. Merritt*, 102 F.4th 375, 381 (6th Cir. 2024).  We have recently clarified that this is true even when the facts are undisputed and the only question on appeal is whether the district court appropriately applied the guideline to the facts. *Id.* at 379–81 (holding that the "clear error" standard is mandated by our earliest cases and Supreme Court precedent); *see also United States v. Cloyd*, 2024 WL 4950317, at *1 (6th Cir. Dec. 3, 2024).  That is because the district court is "better equipped" than an appellate court to decide whether the historical facts show that the

"defendant has sincerely accepted responsibility" for his offense. *Merritt*, 102 F.4th at 380. *See also* U.S.S.G. § 3E1.1 cmt. n.5 ("The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review."). Under this standard, a trial court's "determination of whether a defendant has accepted responsibility . . . will not be overturned unless it is without foundation." *United States v. Turner*, 324 F.3d 456, 462 (6th Cir. 2003) (quoting *United States v. Roberts*, 243 F.3d 235, 240–41 (6th Cir. 2001)).

i.

A defendant who "clearly demonstrates acceptance of responsibility for his offense" can receive up to a 3-level reduction in his base offense level. U.S.S.G. § 3E1.1(a)–(b). But "[a] 'defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right.'" *Turner*, 324 F.3d at 463 (quoting § 3E1.1 cmt. n.3). Instead, the defendant's truthful guilty plea "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." *United States v. Zimmer*, 14 F.3d 286, 289 (6th Cir. 1993) (quoting § 3E1.1 cmt. n.3). The defendant bears the burden to clearly demonstrate that he has accepted responsibility. *Merritt*, 102 F.4th at 381.

The Application Notes to § 3E1.1 offer a non-exclusive list of factors that a district court may treat as "appropriate considerations" in deciding whether a defendant has accepted responsibility. U.S.S.G. § 3E1.1 cmt. n.1. These include "voluntary termination or withdrawal from criminal conduct or associations," "post-offense rehabilitative efforts (*e.g.*, counseling or drug treatment)," and "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility." *Id.* cmt. n.1, (B), (G)–(H). The district court may also consider:

> (A) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3. . . . A defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility.

*Id.* cmt. n.1(A).

Here, the district court denied Jett an acceptance-of-responsibility reduction based on his possession of and attempts to "fish" and smuggle K2 while in detention, as well as his persistent false denials of those actions. On appeal, Jett no longer disputes that he engaged in the K2 conduct.

The district court began its discussion by explaining that it had no "need to rely on the application notes" to the Guidelines to deny the acceptance-of-responsibility reduction. R. 73, Sent. Tr., PageID 303. That was correct. As both parties agree, the "application notes can only support the plain meaning of the guidelines," which control. Reply Br. at 10. But the court did reference Note 1(A) as an example of "things that the [c]ourt could consider." R. 73, Sent. Tr., PageID 303. As the court pointed out, that note "suggests that a defendant who falsely denies or frivolously contests relevant conduct that the [c]ourt determines to be true has acted in a manner inconsistent with the acceptance of responsibility." *Id.* at 304.

The court then returned to the Guideline itself, stating that section "3E1.1(a) require[d] [it] . . . to find by preponderance of the evidence that Mr. Jett accepted responsibility." *Id.* The court noted that "evidence in his favor . . . included the guilty plea." *Id.* On the other hand, the court considered the "extremely persuasive" evidence that Jett had possessed and smuggled K2 while in jail. *Id.* at 305. The court also stressed that Jett had falsely denied his involvement in the K2 smuggling to the probation officer preparing his PSR, even after he was "given time to confer with counsel" and an "opportunity to acknowledge" the conduct. *Id.* In the end, the court gave two reasons why Jett's conduct and his denial of it were "really inconsistent with acceptance of responsibility": he's "one, not engaging in *conduct* that shows acceptance of responsibility; two, he's *not admitting to it* . . . when he's confronted with the facts." *Id.* (emphasis added).

The district court did not clearly err. We have repeatedly upheld decisions denying the acceptance-of-responsibility reduction to defendants who engaged in conduct similar to the offense of conviction while awaiting the entry of a plea or sentencing. As we explained in *United States v. Reed*, "continued criminal conduct is incompatible with the idea of acceptance of responsibility" because "[t]hose who continue their crimes in jail" show "a cynical and remorseless contempt for law." 951 F.2d 97, 100 (6th Cir. 1991). We have therefore approved

reduction denials when the defendants' behavior demonstrated a failure to "turn[] away from the lifestyle that had motivated [their] offense[s]." *United States v. Redmond*, 475 F. App'x 603, 613 (6th Cir. 2012) (citation omitted). These cases include many involving defendants charged with drug offenses who sought, acquired, or used drugs "while incarcerated"[1] or on bond[2] pending further proceedings—the precise situation here.

In this case, Jett expressed remorse for his methamphetamine offense at the plea hearing and in a letter he wrote to the court. But the district court was within its discretion to decide that those expressions were "outweighed by conduct . . . inconsistent with such acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. n.3. That included Jett's possession and smuggling of drugs while detained on the methamphetamine offense.

ii.

Jett takes issue with the district court's finding. The Guideline's text permits a defendant who "clearly demonstrates acceptance of responsibility for his offense" to receive up to a 3-level reduction in his base offense level. U.S.S.G. § 3E1.1(a)–(b). As Jett sees it, the "plain meaning of § 3E1.1(a)" forbade the district court from considering his K2 possession and attempted smuggling because that conduct was "unrelated to" the methamphetamine offense "for which [Jett] was being sentenced." Appellant Br. at 13. In essence, Jett argues that because he needed

[1]*See United States v. Snyder*, 913 F.2d 300, 305 (6th Cir. 1990) (denying reduction because of defendant's conspiracy to "acquire additional cocaine . . . while incarcerated" for possession with intent to distribute); *United States v. Clements*, 142 F. App'x 223, 226–28 (6th Cir. 2005) (denying reduction because defendant attempted to smuggle marijuana into jail after his indictment and arrest for manufacturing charges but before his guilty plea); *United States v. Askew*, 173 F.3d 856, at *1 (6th Cir. 1999) (unpublished table decision) (denying reduction because defendant was caught with marijuana while detained, but before pleading guilty, for possession of cocaine with intent to distribute); *Redmond*, 475 F. App'x at 613 (denying reduction because defendant, after pleading guilty, tried to persuade a co-defendant to help him smuggle drugs into prison while incarcerated for drug manufacturing).

[2]*United States v. Walker*, 182 F.3d 485, 489–90 (6th Cir. 1999) (denying reduction for possession of cocaine while on bond after pleading guilty to conspiracy to distribute); *Zimmer*, 14 F.3d at 289 (denying reduction because defendant's use of marijuana while on bond for possession with intent to distribute "was both a crime and a violation of the conditions of his bond, indicating that he had not accepted responsibility for his crimes"); *United States v. Arzola*, 528 F. App'x 487, 495 (6th Cir. 2013) (same); *United States v. Humphreys*, 108 F. App'x 329, 330 (6th Cir. 2004) (order) (same); *United States v. Salyers*, 661 F. App'x 862, 867–68 (6th Cir. 2016) (denying reduction because defendant continued to distribute heroin while out on bond); *United States v. Salabarria*, 2021 WL 5712151, at *3 (6th Cir. 2021) (same); *United States v. Searer*, 636 F. App'x 258, 260–61 (6th Cir. 2016) (denying reduction because defendant continued to use drugs while out on bond for a manufacturing offense); *United States v. Cadieux*, 846 F. App'x 389, 394 (6th Cir. 2021) (same); *United States v. Sullivan*, 134 F. App'x 77, 79 (6th Cir. 2005) (collecting cases).

only to "demonstrate[] acceptance of responsibility" for the *crime of conviction*, any other behavior was irrelevant and should not have been considered. We disagree.

In support of his argument, Jett points to the ordinary meaning of "offense," arguing that it refers to the conduct that occasioned his conviction. *Id.* at 12. We agree that the Guideline asks whether the defendant has accepted responsibility for the offense of conviction; the question is what it means to "clearly demonstrate *acceptance of responsibility*" for it. U.S.S.G. § 3E1.1(a) (emphasis added). The Guideline does not "define [this] term," so "we generally 'give the term its ordinary meaning.'" *United States v. Riccardi*, 989 F.3d 476, 486 (6th Cir. 2021) (quoting *United States v. Zabawa*, 719 F.3d 555, 559 (6th Cir. 2013)).

What does it mean to "accept" responsibility? Black's Law Dictionary tells us that to "accept" "[m]eans something more than to receive, meaning to adopt, to agree to carry out provisions, to keep and retain." *Accept*, BLACK'S LAW DICTIONARY (6th ed. 1990). Black's defines "responsibility" as "[t]he obligation to answer for an act done, and to repair or otherwise make restitution for any injury it may have caused." *Responsibility*, BLACK'S LAW DICTIONARY (6th ed. 1990). Putting these together provides little clarity. What, for example, does it mean to "adopt" or "agree to carry out" "the obligation . . . for an act done"? It might mean nothing more than admitting to an offense and submitting to the prescribed punishment, *i.e.*, pleading guilty. Or it might mean internalizing a sense of remorse and committing to "repair" the harm done by, among other things, committing not to offend again.

We need not dwell long on this question though. Our caselaw forecloses the conclusion that a defendant is entitled to a reduction for acceptance of responsibility *merely* because he has pleaded guilty. *Merritt*, 102 F.4th at 382 ("[W]e have held that simply pleading guilty does not demonstrate acceptance of responsibility."); *United States v. Wolfe*, 71 F.3d 611, 616 (6th Cir. 1995) ("A guilty plea does not automatically entitle Wolfe to this adjustment." (citing *United States v. Carroll*, 893 F.2d 1502, 1512 (6th Cir. 1990)). In addition, Jett's own argument belies such an understanding. Jett argues that "under the plain language of § 3E1.1(a), courts must consider a defendant's demonstrations of acceptance *and remorse* after committing 'his offense.'" Reply Br. at 4 (emphasis added). And Jett says that a number of non-plea-specific facts counsel in favor of a finding that he accepted responsibility. For example, Jett argues that

his expressions of remorse in the PSR and in a letter he wrote to the district judge demonstrated his acceptance of responsibility. *Id.* at 5.  So did the "meaningful steps" Jett took in the "nearly three years" following the crime "to become a law-abiding citizen after realizing the harm his offense caused." *Id.*  Jett plainly contemplates that a defendant's conduct long after, and unrelated to, the offense of conviction can demonstrate his acceptance of responsibility in the sense of showing his repentance and remorse.  Given that, it is difficult to see why a district court would be forbidden, as a matter of law, from considering a defendant's post-offense conduct that may cut the other way, by casting doubt on the sincerity of the defendant's stated professions of contrition.  And, as noted above, our caselaw indicates that such considerations are well in bounds. *See supra* notes 1 & 2.

It is true that we have "expressly rejected" the notion that a district court may deny an acceptance of responsibility reduction based on a defendant's "general criminal disposition," inferred from conduct "plainly unrelated" to the offense of conviction. *United States v. Banks*, 252 F.3d 801, 806–07 (6th Cir. 2001).  In *Banks*, for example, we held that the district court erred by looking to "Banks' post-plea assault and destruction of property charges" because they "were plainly unrelated to the offenses for which he was being sentenced (drug trafficking and firearm possession)." *Id.* at 807.  But, as noted above, loads of Sixth Circuit caselaw finds conduct like Jett's to be sufficiently related to the conviction offense to show a lack of acceptance of responsibility within the meaning of § 3E1.1(a).  *Banks* itself pointed to two cases that deemed continued involvement with drugs inconsistent with acceptance of responsibility for drug distribution or manufacturing offenses: "*United States v. Walker*, 182 F.3d 485 (6th Cir. 1999) (denial of an adjustment for acceptance of responsibility upheld where the defendant, having pled guilty to conspiracy to distribute cocaine, tested positive for cocaine use while free on bond pending sentencing)" as well as "*United States v. Zimmer*, 14 F.3d 286 (6th Cir. 1994) (denial of an adjustment for acceptance of responsibility where the defendant, having pled guilty to manufacturing marijuana, tested positive for marijuana use while free on bond pending sentencing)." *Id.* at 807.

It does not matter that different drugs formed the basis for Jett's conviction (methamphetamine) and his in-jail possession and attempted smuggling (K2).  We have held that

"[d]ifferent drug offenses" are sufficiently "related to the underlying [drug] offense" to come within § 3E1.1(a) because they "are of the same type." *Sullivan*, 134 F. App'x at 79 (citation modified) (holding that the "district court did not clearly err in determining that Sullivan's continued cocaine use (and lie about it to the court) demonstrated a failure to accept responsibility" for possessing ecstasy with intent to distribute); *see also Humphreys*, 108 F. App'x at 330 (order) (denying acceptance of responsibility where defendant pleaded guilty to conspiracy to manufacture methamphetamine but used illegal drugs, including marijuana, while on bond); *United States v. Love*, 518 F. App'x 427, 429 (6th Cir. 2013) (affirming denial of the acceptance-of-responsibility reduction because the defendant attempted to distribute hydrocodone and had a prior arrest for possession with intent to distribute marijuana); *Searer*, 636 F. App'x at 261 ("[W]e have affirmed the denial of a defendant's acceptance-of-responsibility credit even when the drug involved in the offense of conviction is different from the drug used while on bond."); *United States v. Olvera*, 954 F.2d 788, 793 (2d Cir. 1992) (denying acceptance of responsibility for plea to possession with intent to distribute cocaine because defendant tried to smuggle marijuana into prison).

Nor does it matter that some of Jett's conduct (the K2 smuggling attempt) occurred shortly before he pleaded guilty. Jett had been indicted at the time and was in pre-trial detention, making his smuggling conduct plainly relevant to whether he truly accepted responsibility for his drug trafficking offense. *United States v. Harper*, 246 F.3d 520, 527 (6th Cir. 2001) (holding that a district court may consider post-indictment behavior in determining acceptance of responsibility), *overruled on other grounds*, *United States v. Leachman*, 309 F.3d 377 (6th Cir 2002); *Clements*, 142 F. App'x at 225–28 (upholding denial of acceptance-of-responsibility reduction where, after indictment but before plea for methamphetamine offenses, defendant transmitted a recipe for LSD and smuggled marijuana into a detention facility).

Lastly, we do not see why, as Jett contends, the multi-year gap between his methamphetamine offense and his K2 infractions would, as a matter of law, render the K2 infractions irrelevant. Section 3E1.1(a) asks whether the defendant has "clearly demonstrate[d] acceptance of responsibility for the offense" of conviction—that is, whether he has shown "true remorse" for it. *United States v. Morrison*, 983 F.2d 730, 735 (6th Cir. 1993). The guilty plea is

"significant evidence" of that contrition. U.S.S.G. § 3E1.1 cmt. n.3. And perhaps a substantial period of crime-free living could be too. But when, as here, the defendant's conduct after indictment casts doubt on the defendant's expression of repentance, the district court is entitled to take that into account when weighing whether the defendant has accepted responsibility.

In short, the text of § 3E1.1(a), as interpreted by the commentary, and our many cases upholding the denial of an acceptance-of-responsibility reduction in circumstances like Jett's, betray his primary argument on appeal: that the district court could not, consistent with the "plain meaning of 3E1.1(a)," consider Jett's in-jail K2 possession and attempted smuggling because that conduct was "unrelated to" his methamphetamine offense.

iii.

Jett next offers a more specific critique of the district court's conclusion. He points to the fact that the district court referenced Application Note 1(A) when explaining its reasoning. Jett contends that deploying that application note would *not* permit the district court to consider his in-jail K2 possession and smuggling because those actions are not "Relevant Conduct" for the methamphetamine offense, within the meaning of another Guidelines provision, § 1B1.3. This argument requires some elaboration.

Application Note 1(A) says that a "defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. n.1(A). The application note defines "relevant conduct" as "conduct for which the defendant is accountable under § 1B1.3." *Id.* Section 1B1.3, in turn, explains that relevant conduct includes "all acts . . . committed . . . by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense" and acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(1) & (2). Jett argues that his possession and attempted smuggling of K2 in the jail are not "relevant conduct" for the methamphetamine offense because they occurred three years later and were neither a regular occurrence nor sufficiently similar to his offense of conviction. So, he says, the district court erred in

considering Jett's denial of the K2 incidents when refusing him the acceptance of responsibility reduction.

Two problems beset this argument. The first is that Jett made no such argument to the trial court. In his sentencing memorandum, Jett's lone objection to the potential denial of the acceptance of responsibility reduction was factual—he claimed that he had not, in fact, "attempted to obtain" K2 while in detention. R. 64-1, Motion for Variance, PageID 235. "*If* the allegation is not proven," at the sentencing hearing, Jett argued, he "should receive credit for 'acceptance.'" *Id.* at 236 (emphasis added). At the sentencing hearing, Jett again raised only this fact-based objection, claiming that, if the government couldn't "meet [its] burden" to prove Jett's involvement, he "should receive the three level reduction." R.73, Sent. Tr., PageID 284. Based on these lone objections, the trial court would have had no reason to believe that Jett did not also accept the converse proposition: if the government proved the K2 conduct, denying the acceptance-of-responsibility reduction would be warranted. If Jett had a different objection, the district court's invocation of the *Bostic* question, after it had referenced Application Note 1(A), was Jett's time to speak up. *United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004) ("If a party does not clearly articulate any objection and the grounds upon which the objection is based, when given this final opportunity to speak, then that party will have forfeited its opportunity to make any objections not previously raised and thus will face plain error review on appeal."). He did not. So ordinarily we would subject Jett's belatedly raised argument to the "difficult" plain error standard of review, which the government obliquely invokes in its briefing. *See United States v. Ramamoorthy*, 949 F.3d 955, 960 (6th Cir. 2020) (quoting *United States v. Jackson*, 918 F.3d 467, 482 (6th Cir. 2019)).

But even applying fresh review, Jett's Note 1(A) argument cannot succeed. We note at the outset that it is not clear whether the district court actually relied on Application Note 1(A), given its express disclaimer of any "need to rely on the application notes" to make its decision. R. 73, Sent. Tr., PageID 303. Yet, the court did reference and read from the note. So we will assume that it did rely, at least in part, on Note 1(A) in making its decision. Even so, any error in applying Note 1(A)'s specific definition of "relevant conduct" did not make the district court's ultimate conclusion "clearly erroneous."

Both parties agree that Note 1(A) is merely one of several "non-binding and non-exclusive factors that a court *may* consider." Reply Br. at 10. That Note suggests to courts how they may treat "relevant conduct," as defined by § 1B1.3. It says that a court may credit "truthfully admitting or not falsely denying" such conduct; that a defendant may still receive the reduction, though he "remain[s] silent" regarding such conduct; and that lying about or "frivolously contest[ing]" such conduct may foreclose the reduction. U.S.S.G. § 3E1.1 cmt. n.1(A). But it says nothing about whether a district court may deny a reduction when a defendant affirmatively lies about or "frivolously contests" acts that, while *not* constituting "relevant conduct" within the meaning of § 3B1.1, are still relevant to sentencing for that offense. And we see no reason why a district court could not consider such lies, including Jett's denial of the K2 conduct.

Jett's "misconduct while in jail awaiting sentence" is undoubtedly "an appropriate [sentencing] consideration . . . because it is relevant to the history and characteristics of the defendant, and to the need for the sentence to promote respect for the law." *United States v. Mitchell*, 107 F.4th 534, 541 (6th Cir. 2024) (citation omitted). And lying to a probation officer about a matter material to sentencing hardly shows "true remorse" for the offense. *Morrison*, 983 F.2d at 735. Indeed, it can constitute obstruction of justice, *see* U.S.S.G., § 3C1.1, cmt (4)(h), which "ordinarily indicates that the defendant has not accepted responsibility." *Id.* § 3E1.1 cmt. n.4. *See, e.g.*, *United States v. Wilson*, 197 F.3d 782, 784–87 (6th Cir. 1999) (upholding obstruction enhancement and acceptance-of-responsibility denial where defendant lied about identity and past criminal history); *United States v. Rathod*, 826 F. App'x 527, 536–37 (6th Cir. 2020) (upholding obstruction enhancement and acceptance-of-responsibility denial where defendant lied about his income and assets, which were relevant to potential restitution and fines).

The ultimate question under the Guidelines is whether Jett has "clearly demonstrate[d] acceptance of responsibility" for the methamphetamine offense. U.S.S.G. § 3E1.1(a). Our caselaw makes clear that a defendant's post-indictment drug activity provides ample support for the conclusion that his guilty plea was not a true indication of having accepted responsibility for his drug-related offense. *See supra*, at 12–13. Jett, having been indicted for a methamphetamine

offense, engaged in drug behavior while in detention on that charge.  He then lied about that behavior to the probation officer preparing his presentence report and persisted in denying this involvement despite "extremely persuasive" evidence to the contrary.  The district court did not clearly err in denying Jett an acceptance-of-responsibility reduction.

B.

Jett next argues that his sentence is procedurally unreasonable because the district court failed to adequately address his primary argument for a downward variance—that the nearly three years of good behavior between his methamphetamine offense and his arrest warranted leniency.  We decline to reach this issue because, as the government points out, Jett either waived this argument or invited any error, and Jett has made no showing of "manifest injustice."

A defendant waives an argument when he "intentional[ly] relinquish[es] or abandon[s]" a "known right." *United States v. Carter*, 89 F.4th 565, 568 (6th Cir. 2023) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).  He forfeits an argument when he "fail[s] to make the timely assertion of a right." *Id.*  The doctrine of invited error lies in between. *Id.*  It applies when the defendant "contribut[es] in some way to the district court's error without intentionally relinquishing [his] right." *Id.* (quoting *United States v. Montgomery*, 998 F.3d 693, 698 (6th Cir. 2021)).  We "sometimes—albeit rarely—review invited errors to prevent 'manifest injustice,'" which is a high bar. *Id.* (quoting *United States v. Akridge*, 62 F.4th 258, 263 (6th Cir. 2023)).

Our decision in *Carter* is on all fours with this case.  There, as here, the defendant argued that the district court had procedurally erred by failing to address his non-frivolous argument for a downward variance. *Id.*  But, when the district court asked whether defense "counsel [was] satisfied that [the court had] addressed on the record all non-frivolous arguments asserted," Carter's lawyer confirmed that the court had. *Id.* at 569–70.  We held that this response constituted either a waiver or an inviting of error because the defendant specifically affirmed with the court that it had sufficiently addressed his arguments. *See id.* at 570.

We further explained that *Bostic*'s plain-error standard did not apply because *Bostic* only asks "broadly" whether the parties "object to the sentence." *Id.*  The *Bostic* question does not

"call for [the] 'plain, positive concurrence with the district court's conclusions,'" that Carter offered in that case. *Id.* at 569 (citation omitted).

There is no distinction between *Carter* and this case. Here, the district court first asked the *Bostic* question: "Pursuant to *United States versus Bostic* does the government have any objections to the sentence just pronounced that I have not previously raised?" R. 73, Sent. Tr., PageID 323. Both parties responded "no." The court then went further and asked, "Is counsel satisfied that I've sufficiently addressed on the record all non-frivolous arguments asserted?" *Id.* at 324. Jett, represented by counsel, responded, "Yes, your honor." *Id.*

Our decision in *Carter* thus forecloses our review of Jett's claim that his sentence is procedurally unreasonable because the district court failed to adequately address his primary argument for a variance. *See United States v. Cogdill*, 130 F.4th 523, 527 (6th Cir. 2025) ("[O]ur court's published opinions bind us." (citation omitted)). Jett affirmatively represented to the district court that it *had* addressed all the "non-frivolous arguments" he had raised. He cannot now fault the district court for taking him at his word.

The requirement that parties alert a district court to potential errors through timely objections plays an important role in our adversarial system. As we have explained, "[r]equiring clear articulation of any objection and the grounds therefor . . . 'aid[s] the district court in correcting any error'" "on the spot." *Bostic*, 371 F.3d at 873 (quoting *United States v. Jones*, 899 F.2d 1097, 1102–03 (11th Cir. 1990)). A party's timely objection can thus avert the need for appellate intervention altogether or "guid[e] appellate review" when necessary. *Id.* (quoting *Jones*, 899 F.2d at 1102). And when the objection is that the district judge failed to address a non-frivolous argument in support of a variance, a timely reminder to the district judge to address the argument can save a time-consuming remand. But that did not happen here. Instead, Jett assured the district court that it had addressed all of his arguments.

Jett does not claim that any "manifest injustice" will result from not entertaining his claim. Instead, he responds that we should review for plain error because our decisions in *United States v. Allen*, 93 F.4th 350 (6th Cir. 2024), and *United States v. Thomas-Mathews*, 81 F.4th 530 (6th Cir. 2023), applied plain error in similar circumstances. Neither case governs here.

In *Allen*, the defendant raised an unclear objection to the district court's *Bostic* question. The court asked Allen whether it had "addressed on the record all non-frivolous arguments that have been asserted." *Allen*, 93 F.4th at 355. Allen responded by objecting to three factual findings. *Id.* We applied plain error because the grounds for Allen's objection were unclear. *Id.* at 356–57; *see also United States v. Fowler*, 819 F.3d 298, 306 (6th Cir. 2016) (declining to find that a defendant waived objection to the failure to calculate the appropriate guidelines range where the defendant made no "plain, explicit concession on the record"). Unlike in *Allen*, the district court here asked the *Bostic* question about remaining objections and then asked whether there were any other non-frivolous arguments that it had not addressed. Rather than object or raise any issues with the court's alleged failure to consider his argument for a downward variance, Jett affirmatively told the district court it *had* addressed his arguments. The defendant in *Allen* never affirmed anything with the district court. Quite the opposite, actually.

Jett's reliance on *Thomas-Matthews* fares no better. There, as here, the defendant claimed on appeal that the district court had failed to address his non-frivolous argument for a downward variance. At the sentencing hearing, the district court asked the *Bostic* question and followed up by asking whether the defendant was "satisfied that the district court addressed all of his arguments," to which he responded affirmatively. *Thomas-Mathews*, 81 F.4th at 538. We reviewed for plain error. *Id.* at 541. Despite those similarities, *Thomas-Mathews* does not govern here. That's because *Thomas-Mathews* did not hold that plain error, rather than invited error or waiver, applies when a defendant gives his "affirmative concurrence" that the district court has addressed his arguments. *Carter*, 89 F.4th at 569. The government did not raise invited error or waiver. And the opinion in *Thomas-Matthews* did not mention either doctrine, much less purport to choose between those standards and plain error. The opinion's mere application of the plain-error standard is not a holding about its propriety. *See Wright v. Spaulding*, 939 F.3d 695, 701–02 (6th Cir. 2019) ("For a court's conclusion about an issue to be part of its holding" and thus binding, "it must be clear that the court considered the issue and consciously reached a conclusion about it."). *Carter*, by contrast, directly addressed the standard-of-review question. 89 F.4th at 570–71. It controls where, as here, the defendant plainly and clearly gave his affirmative concurrence.

In sum, Jett either invited any potential error or waived his argument that the district court failed to consider his argument for a downward variance by providing a "plain, positive concurrence with the district court's conclusions." *Id.* at 569 (citation omitted). And he makes no attempt to show a "manifest injustice." We thus decline to reach this issue.

\* \* \*

We AFFIRM.

———————————

**CONCURRENCE**

———————————

WHITE, Circuit Judge, concurring. I agree with the majority that this case is controlled by the holding of *United States v. Carter*, 89 F.4th 565, 570 (6th Cir. 2023), that the invited-error doctrine applies where a defendant is asked at sentencing if the sentencing court has considered all his non-frivolous arguments and plainly and clearly gives his affirmative concurrence. Accordingly, I concur in full.